**ROTEC INDUSTRIES, INC., an Illinois corporation, Plaintiff–Appellant,**

v.

**MITSUBISHI CORPORATION, a corporation organized under the laws of Japan; Tucker Associates, Inc., an Oregon corporation; Garry Tucker, an individual, Defendants–Appellees.**

No. 02–35268.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 11, 2003.

Filed Nov. 10, 2003.

---

George P. McAndrews and Gerald C. Willis, McAndrews, Held & Malloy, Ltd., Chicago, IL, for the plaintiff-appellant.

Michael O. Warnecke, Debra Rae Bernard, Mayer, Brown, Rowe & Maw, Chicago, IL, for the defendants-appellees.

Before SKOPIL, HALL, and GRABER, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

This controversy arises out of the construction of a massive dam on the Yangtze River by the government of the People's Republic of China. The parties competed for contracts to sell construction equipment to the Chinese government. Rotec Industries, Inc., appeals the district court's order granting summary judgment to defendants on Rotec's claim of violation of section 2(c) of the Robinson–Patman Act and on its Oregon state law claim of intentional interference with economic advantage. Rotec argues that the district court erred by holding that it lacked subject matter jurisdiction over the Robinson–Patman claim. Rotec also assigns error to the district court's ruling that Rotec did not introduce sufficient evidence to create an issue of fact regarding the causation element of Rotec's intentional interference claim.

We have jurisdiction under 28 U.S.C. § 1291. Finding no error in the district court's grant of summary judgment, we AFFIRM.

## FACTS

Almost two millennia after Chinese emperors began construction on what would one day be the Great Wall, China's government began construction on another ambitious public works project. Upon completion, the Three Gorges Dam on the Yangtze River will be an extraordinary accomplishment of modern engineering. The project began in 1993 and is being conducted in three phases. When construction ends in 2009, the dam is expected to be the largest hydroelectric dam in the world.

Rotec is a manufacturer of concrete placement equipment. During Stage I of the dam project, the China Yangtze Three Gorges Project Development Corporation ("Three Gorges Corp."), a corporation owned by the Chinese government, bought Rotec equipment for use in the construction of the dam. In 1995, Three Gorges Corp. announced that it would seek bids for contracts to buy concrete placement equipment during Phase II of the project. Rotec sought to win these contracts. In December 1995, Mitsubishi, a Japanese corporation, Potain, a French corporation, and C.S. Johnson, an Illinois corporation (collectively, "the defendants"), agreed they would work together to place a bid to compete with Rotec for these contracts.

On January 15, 1996, seven companies placed bids to win the contracts to provide equipment for the dam. A Bid Evaluation Committee, consisting of approximately sixty members, evaluated the bids and recommended both Rotec and the defendants to Three Gorges Corp. Negotiations then were conducted for several months. In November 1996, Rotec secured a contract

to sell three pieces of concrete placement equipment. The buyer was listed as the Chinese Resources National Corporation ("CRNC"). Three Gorges Corp. was listed as the "owner." CRNC contracted to buy the equipment for $30,515,319.

CRNC also received an option to purchase two more pieces of equipment from Rotec for $15,859,000. Instead of exercising this option, however, CRNC bought the other two pieces of equipment from Mitsubishi for $17,825,190 on December 16, 1996. CRNC was named as the buyer and Three Gorges Corp. as the "owner" of this additional equipment. Also on December 16, 1996, Mitsubishi signed an addendum to its contract with CRNC, agreeing to pay CRNC a 0.5 percent "commission" on the contract to be delivered to a CRNC account in Hong Kong. At some point during the negotiating process, one of the parties involved with Mitsubishi recommended a Bid Evaluation Committee member for a quality control job.

Rotec sued defendants for patent infringement in the Central District of Illinois. The claim was dismissed. Rotec subsequently filed another suit against the defendants in the Central District of Illinois, alleging a variety of claims. Approximately five months after the deadline to amend its pleadings, Rotec sought leave to amend to add the claims that are now before us. The district court in Illinois denied Rotec leave to amend but granted a motion for relief from a protective order so that Rotec could bring claims based on certain documents in a different district. In so doing, the district court expressed "no opinion" on the propriety of bringing such claims in any district.

Rotec then filed suit in the District of Oregon, alleging violations of the Robinson–Patman Act, RICO, and Oregon state law prohibiting intentional interference with economic relations. In two separate published orders, the district court granted summary judgment in favor of Mitsubishi on all claims. 181 F.Supp.2d 1173 (D.Or.2002); 163 F.Supp.2d 1268 (D.Or. 2001). This appeal followed.

## DISCUSSION

### A. Claim Preclusion

■ Defendants argue that the claims brought by Rotec could have been brought in the federal action in Illinois and are therefore barred by the doctrine of *res judicata* or, more specifically, claim preclusion. We do not consider the argument because it is waived.

■ "Claim preclusion is an affirmative defense which may be deemed waived if not raised in the pleadings. Moreover, the failure of the defendant to object to the prosecution of dual proceedings while both proceedings are pending also constitutes waiver." *Clements v. Airport Auth. of Washoe County,* 69 F.3d 321, 328 (9th Cir.1995) (citation omitted). In district court, the defendants did not object to Rotec's prosecution of the two proceedings that appear to arise out of the same set of operative facts.

■ Since the defense is not one of jurisdiction, it generally cannot be raised for the first time on appeal. Extraordinary circumstances may justify raising claim preclusion for the first time on appeal. *Cf. Clements,* 69 F.3d at 327–31 (applying issue preclusion for first time on appeal); *Chew v. Gates,* 27 F.3d 1432, 1437 n. 2 (9th Cir.1994) (same). In this case, we see no reason to depart from our general rule that claim preclusion is waived if not raised in district court. There is no reason to allow litigants to delay objecting to dual proceedings until they receive a favorable judgment in one proceeding. We believe that permitting such conduct could only encourage mischief.

We therefore do not consider defendants' argument that Rotec's claims are barred by claim preclusion.

## B. Jurisdiction Under Section 2(c) of the Robinson–Patman Act

Section 2(c) of the Robinson–Patman Act[1] states:

It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid.

15 U.S.C. § 13(c).

■ The district court held that the conduct at issue did not meet the jurisdictional requirements of section 2(c) of the Robinson–Patman Act, 15 U.S.C. § 13(c). The court declined to rely on our decision in *Rangen, Inc. v. Sterling Nelson & Sons,* 351 F.2d 851 (9th Cir.1965), concluding that *Rangen* was no longer good law in light of *Gulf Oil Corp. v. Copp Paving Co., Inc.,* 419 U.S. 186, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974).

*Rangen* held that a very incidental effect on interstate or foreign commerce was enough to satisfy the jurisdictional requirement of section 2(c). *See Rangen,* 351 F.2d at 861 (stating that payments

"were made in the course of interstate commerce because they created influences intrastate which injured the free competitive interstate commerce in fish food outside Idaho"). In *Gulf Oil,* the Supreme Court interpreted the jurisdictional portion of section 2(a) of the Robinson–Patman Act more narrowly:

[T]he distinct "in commerce" language of the ... Robinson–Patman Act provisions with which we are concerned here appears to denote only persons or activities within the flow of interstate commerce—the practical, economic continuity in the generation of goods and services for interstate markets and their transport and distribution to the consumer. If this is so, the jurisdictional requirements of these provisions cannot be satisfied merely by showing that allegedly anticompetitive acquisitions and activities *affect* commerce.

*Gulf Oil,* 419 U.S. at 195, 95 S.Ct. 392.

In *Gulf Oil,* the Supreme Court interpreted section 2(a) of the Robinson–Patman Act, 15 U.S.C. § 13(a), not the section applicable to this case, section 2(c), 15 U.S.C. § 13(c). Section 2(a) forbids "any person engaged in commerce, in the course of such commerce" to discriminate in price "where either or any of the purchases involved in such discrimination are in commerce" and where the discrimination has substantial anti-competitive effects "in any line of commerce." 15 U.S.C. § 13(a); *see also Gulf Oil,* 419 U.S. at 193–94, 95 S.Ct. 392. Rotec argues that, because *Gulf Oil* involved section 2(a) while *Rangen* involved section 2(c), the district court should have applied the analysis of *Rangen.* We disagree.

---

1. The Robinson–Patman Act is codified at 15 U.S.C. §§ 13, 13a, 13b and 21a. It was passed in 1936 and is sometimes referred to as the "Robinson–Patman Anti-Discrimina-

tion Act" or the "Robinson–Patman Price Discrimination Act." *See* 15 U.S.C. § 13 and accompanying historical and statutory notes.

The only relevant differences between the two jurisdictional provisions are section 2(a)'s requirements that "purchases involved in such discrimination" must be "in commerce" and that the price discrimination must have a substantial effect "in any line of commerce." 15 U.S.C. § 13(a). Nothing in *Gulf Oil*'s analysis, however, was unique to section 2(a). Rather, *Gulf Oil* spoke of the Robinson–Patman Act in its entirety, and since *Gulf Oil*, we have indicated that the Act's jurisdictional provisions are co-extensive in scope. *See Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 881–82 (9th Cir.1982) (holding that the jurisdictional reach of sections 2(d) and 2(e) is limited to that of 2(a)).

*Rangen* itself recognized the parallel between section 2(a) and section 2(c). *Rangen* principally relied on *Moore v. Mead's Fine Bread Co.*, 348 U.S. 115, 75 S.Ct. 148, 99 L.Ed. 145 (1954). *See Rangen*, 351 F.2d at 860–61. *Moore* interpreted section 2(a). We specifically noted this fact in *Rangen*, but applied *Moore* to the jurisdictional analysis under section 2(c). *Id.*

Moreover, the Supreme Court in *Gulf Oil* gave *Moore* a very narrow reading. It stated that *Moore* was concerned with the scope of Congress's commerce power, but that *Moore* did not squarely address the jurisdictional requirement of section 2(a). *Gulf Oil*, 419 U.S. at 201, 95 S.Ct. 392. Because *Rangen* relied on a more expansive interpretation of *Moore*, *Gulf Oil* undercuts *Rangen*'s analysis of section 2(c) jurisdiction.

More recent Supreme Court authority also casts doubt on the continuing validity of *Rangen*. Most notably, in *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001), the

Supreme Court specifically addressed the meaning of the term "engaged in foreign or interstate commerce," as used in the Federal Arbitration Act. The Court found that the term "engaged in commerce" is a term of art Congress employs when it does not intend to exercise its full power under the Commerce Clause. *Id.* at 115, 121 S.Ct. 1302. Yet our holding in *Rangen* rested in part on a case interpreting the outer limits of Congress's power under the Commerce Clause. *Rangen*, 351 F.2d at 860–61 (relying on *Moore*, 348 U.S. at 119, 75 S.Ct. 148).

Rotec's argument that we have "reaffirmed" *Rangen*'s jurisdictional analysis is unpersuasive. In *May Department Store v. Graphic Process Co.*, 637 F.2d 1211 (9th Cir.1980), a party raised the argument for the first time on appeal that a plaintiff's section 2(c) complaint did not properly allege the interstate commerce requirements of section 2(c). The court held that the party should be given a chance to amend its pleadings to properly plead the commerce requirement. In so holding, the court stated that the "interstate character of the companies involved may provide a sufficient commerce nexus to meet the jurisdictional requirement." *Id.* at 1216 (citing *Rangen*, 351 F.2d at 861). The court did not address the extent to which *Rangen* survives *Gulf Oil*. The precise holding on this issue was merely that a party should be given a chance to amend its pleadings when its jurisdictional statement is insufficient.[2]

■ Rotec does not offer the court any logical reason why the Supreme Court's jurisdictional analysis in *Gulf Oil* and *Circuit City* should not apply to section 2(c) of

---

2. We disagree with the holding of the district court for the Western District of Washington that the " 'in commerce' requirement of § 2(c) is broader than the 'in commerce' requirement of § 2(a)." *Thurman Indus., Inc.*

*v. Pay'N Pak Stores, Inc.*, 709 F.Supp. 985, 997 (W.D.Wash.1987). That district court opinion cited *Rangen* for this proposition without discussing *Gulf Oil*'s effect on *Rangen*.

the Robinson–Patman Act. Accordingly, the jurisdictional analysis of *Rangen* is overruled.[3]

We hold that the jurisdictional analysis under section 2(c) of the Robinson–Patman Act is governed by the standard announced by the Supreme Court in *Gulf Oil.* The reach of section 2(c) extends only to persons and activities which are themselves within the flow of commerce among the states or with foreign nations, but does not extend to all activities which affect such commerce. *See Gulf Oil,* 419 U.S. at 195, 95 S.Ct. 392.

■ The fact that defendants' $17.8 million contract with Three Gorges Corp. included a term that arguably required that about $50,000 of tools come from the United States is not relevant to the jurisdictional analysis. Section 2(c) provides that the unlawful payment must occur "in the course of" commerce. 15 U.S.C. § 13(c). The allegedly unlawful payments occurred completely outside the United States between a Japanese corporation, Mitsubishi, and a Chinese corporation, CRNC. The money was to be transferred to a bank in Hong Kong. None of this activity can be considered to have occurred "within the flow of" commerce among the several states or with foreign nations. *Gulf Oil,* 419 U.S. at 195, 95 S.Ct. 392. We therefore affirm the district court's dismissal of the section 2(c) claim for lack of subject matter jurisdiction.

## C. Intentional Interference With Economic Relations

■ In Oregon, the tort of intentional interference with economic relations requires Rotec to prove: "(1) the existence of a professional or business relationship (which could include, *e.g.,* a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages." *McGanty v. Staudenraus,* 321 Or. 532, 901 P.2d 841, 844 (1995). The district court assumed for purposes of its decision that all elements other than the causation element were met. It then dismissed the action because Rotec failed to demonstrate causation between the allegedly improper interference and the damage to the economic relationship.

■ Like the district court, we will assume, for purposes of this opinion, that the improper means was defendants' payment of a 0.5 percent commission to CRNC. We assume, too, that the offer of a quality control job to a member of the Bid Evaluation Committee was improper. Also like the district court, however, we hold that too many inferences need to be drawn to establish a connection between that improper conduct and Rotec's ultimate failure to secure the two contracts won by defendants.

The heart of Rotec's assertions is that Mitsubishi bought off two members of the Evaluation Committee. According to Rotec, this caused the sixty-member Committee to make the recommendation it did. Nevertheless, Rotec has not come forward with any evidence showing that the two members who allegedly were bought off

---

**3.** A three-judge panel generally has no power to overrule a decision of this court. Such a ruling may be handed down by an en banc panel of this court or the United States Supreme Court (and state high courts on issues of state law). But "we may overrule prior circuit authority without taking the case en banc when an intervening Supreme Court decision undermines an existing precedent of the Ninth Circuit, and both cases are closely on point." *Miller v. Gammie,* 335 F.3d 889, 899 (9th Cir.2003) (en banc) (internal quotation marks omitted). This is such a case.

had that kind of influence on the Committee. Moreover, according to Rotec's own brief, the Evaluation Committee recommended *both* Rotec and Mitsubishi. It was then that Three Gorges Corp. began negotiating with the parties. Even if we accept Rotec's assertions that Mitsubishi essentially bought the votes of two members of the Evaluation Committee and that these two members caused the sixty-member Evaluation Committee to act as it did, we still cannot identify a linkage between the Committee's actions and CRNC's decision to execute a contract with defendants.

Rotec has simply not come forward with any facts demonstrating a connection between CRNC's decision not to award the contract to Rotec and the allegedly improper award of a quality control job and a kickback by defendants to CRNC. We therefore affirm the district court's grant of summary judgment on this claim.

### Conclusion

The district court correctly dismissed the Robinson–Patman claim for lack of jurisdiction. It also correctly held that Rotec did not come forward with sufficient evidence that could lead a rational trier of fact to conclude that defendants' unlawful payment caused defendants to receive the contract from the Chinese government parties.

AFFIRMED.