In the

# United States Court of Appeals

## For the Seventh Circuit

No. 04-2819

OLGA MAGALA,

*Petitioner,*

*v.*

ALBERTO R. GONZALES, Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals

ARGUED NOVEMBER 2, 2005—DECIDED DECEMBER 27, 2005

Before COFFEY, EASTERBROOK, and WILLIAMS, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* In July 1999 an Immigration Judge ordered Olga Magala to be removed to her native Ukraine. In May 2002, while her administrative appeal was still pending, she married a U.S. citizen and applied for a visa as his relative. This was approved in December 2002. Her lawyer, Michael Thoren, asked the Board of Immigration Appeals to reopen her proceedings (which it still had under advisement) so that she could adjust her status to that of lawful permanent resident. This provoked the Board to act. In April 2003 it dismissed (for lack of merit) the appeal from the July 1999 ruling, observed that it could not "reopen" a proceeding that was still open, and declined to

remand to the IJ for adjustment of status because Thoren had failed to provide the application for that relief required by 8 C.F.R. §1003.2(c)(1), (4). The Board noted, however, that Magala could submit the application within the time allowed for a (proper) motion to reopen. It wrapped up by giving Magala 30 days to depart voluntarily.

Thoren had to act quickly. The clock was ticking on the period to submit the application for adjustment of status and on the period for voluntary departure. The latter window was the shorter one, and, unless it was extended or cancelled, Magala had to leave and wait abroad for the processing of her request for permanent residence. A person who is given the opportunity for voluntary departure yet remains in the United States loses for five years any opportunity to obtain discretionary relief such as adjustment of status. See 8 U.S.C. §1252b(e)(2)(A) (1994 ed.; repealed 1996); *Alimi v. Ashcroft*, 391 F.3d 888 (7th Cir. 2004). The current version of this law has a 10-year rather than a 5-year ban, plus some other changes. See 8 U.S.C. §1229c. We cite the older one because Magala was placed in removal proceedings before the 1996 legislation, and under its transition rules the former version of this bar still applies to her. 110 Stat. 3009-546, 625-27 (1996).

With time pressing, Thoren sat on his hands. He put off telling Magala that her appeal had been decided. He did not file a prompt application for adjustment of status or ask the Board to extend or rescind the privilege of voluntary departure so that adjustment of status would remain available. But in June 2003 Thoren filed a motion to reopen, with the appropriate documentation, and the Board told him the next month that it was too late: because Magala had failed to depart during the 30 days, she had forfeited any opportunity to adjust her status based on her marriage. Thoren did not bother to tell Magala about this decision.

In November 2003 Magala sought Thoren's help in extending her right to engage in employment while her appeal was pending. Only then did she learn that the appeal had been resolved months earlier. Magala fired Thoren; her new counsel, Tzvetelina Boynovska, filed a disciplinary complaint against Thoren with state officials, a step necessary before seeking relief from the Board based on his lapses. See *Matter of Lozada*, 19 I&N Dec. 637 (1988); *Matter of Assaad*, 23 I&N Dec. 553 (2003). Thoren conceded to the Illinois Attorney Registration and Disciplinary Commission that he had botched Magala's case. Boynovska then filed another motion to reopen the removal proceedings, contending that Magala had been prejudiced by Thoren's errors. But the Board denied this motion, observing that the lack of a proper application had been curable while the voluntary-departure window remained open, and that Thoren told the ARDC that he had informed Magala of the Board's April decision the following month.

In this court the parties dwell on constitutional arguments, which are pointless because removal is not a criminal proceeding and there is no constitutional ineffective-assistance doctrine. See *Stroe v. INS*, 256 F.3d 498 (7th Cir. 2001). The Constitution entitles aliens to due process of law, but this does not imply a right to good lawyering. Every litigant in every suit and every administrative proceeding is entitled to due process, but it has long been understood that lawyers' mistakes in civil litigation are imputed to their clients and do not justify upsetting the outcome. See, e.g., *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976); *Societe International v. Rogers*, 357 U.S. 197, 212 (1958); *United States v. 7108 West Grand Avenue*, 15 F.3d 632 (7th Cir. 1994). The civil remedy is damages for malpractice, not a re-run of the original litigation.

To say that the Constitution does not assist Magala is not, however, to say that she has no potential arguments. The Board may grant relief as a matter of sound discretion; agencies are not limited to the very least that the Constitution demands. The Board has been willing to assist aliens whose rights have been undermined by bad lawyers, whether or not the Constitution requires this, and it considered Magala's argument on the merits rather than stating that substandard legal assistance is immaterial. Because the agency entertains such contentions, basic principles of administrative law demand that it do so carefully and rationally.

The Board's care is in doubt. It relied on Thoren's statement that he told Magala in May 2003 about the Board's decision of April 2, 2003, dismissing her initial appeal, and took this as conclusive proof that Magala knew of her need to depart before the 30 days had run. Yet in this respect Thoren and Magala disagreed; an agency cannot credit one person's testimony over another's on a material issue without a hearing to determine who is right. Worse, even by Thoren's account Magala had been prejudiced. A date "in May 2003" likely is more than 30 days after April 2, 2003—another part of Magala's statement implied that the meeting had occurred in late May—so Magala's time to depart (or obtain an extension of time to do so) had expired and her opportunity to obtain an adjustment of status had lapsed before Thoren clued her in.

What is more, the Board did not mention an important difference between the old version of the voluntary-departure bar and the current one. (It may not have recognized that Magala is covered by the old law.) The version applicable to Magala says that an alien who is allowed to "depart voluntarily at his own expense . . . who remains in the United States after the scheduled date of departure, *other than because of exceptional circumstances*, shall not be eligible for" adjustment of status during the next five years.

8 U.S.C. §1252b(e)(2)(A) (1994 ed.) (emphasis added). The Board did not consider whether counsel's bungling is an "exceptional circumstance" justifying relief from the presumptive bar. The pre-1996 statute defined "exceptional circumstances" as serious matters beyond the alien's control, 8 U.S.C. §1252b(f)(2) (1994 ed.). Woeful legal "assistance" that undermines an alien's rights may fit that definition. One court of appeals deems a lawyer's failure to alert the alien to the consequences of non-departure to be so grave that it has asked the Board to consider establishing an exceptional-circumstance escape hatch to the current statute, even though the 1996 amendment deleted that language. See *Zmijewska v. Gonzales*, 426 F.3d 99 (2d Cir. 2005). We express no view on whether that would be sensible (or even legally possible); it is enough to say that, under the former version of this statute, the Board had available the means to protect Magala from the consequences of Thoren's blunders. But it never mentioned the possibility.

Boynovska and the Board may share responsibility for this oversight. Lawyers all too often invoke the Constitution as if it were a panacea and bypass seemingly mundane arguments based on statutes and regulations. Mimicking Gresham's Law, flabby constitutional generalities drive out sound legal points. Aliens who fail to present their arguments to the Board cannot make them in court either; exhaustion of administrative remedies is no less a norm of administrative law than is the obligation to render careful decisions. See 8 U.S.C. §1252(d)(1). Because the agency's lawyer seems to be as drawn to the Constitution as Magala's—counsel for the Department of Justice told us at oral argument that he had never considered the possibility that there might be an administrative-law dimension to this litigation—the exhaustion doctrine has not been invoked. The parties have not joined issue on the question whether an ineffective-assistance claim by itself should have alerted

the Board to the possibility that exceptional circumstances obtain.

It seems best to remand so that the Board may decide whether Boynovska did enough to preserve a statutory contention—and, if so, to address that subject on the merits. See *INS v. Ventura*, 537 U.S. 12 (2002). The Board also should consider whether this is an issue it ought to raise on its own so as to avoid unnecessary constitutional adjudication.

The petition for review is granted, and the matter is remanded to the Board for proceedings consistent with this opinion.

A true Copy:

　　　　Teste:

　　　　　　　　　　　_____
　　　　　　　　　　　*Clerk of the United States Court of*
　　　　　　　　　　　*Appeals for the Seventh Circuit*