**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AMARJEET SINGH,
                    *Petitioner-Appellant,*

v.

ALBERTO R. GONZALES, Attorney
General; MICHAEL CHERTOFF,
Secretary, Department of
Homeland Security; NANCY
ALCANTAR, Field Office Director of
Detentions, Immigration and
Customs Enforcement, Department
of Homeland Security; CHARLES
DEMORE, District Director,
Immigration and Customs
Enforcement, Department of
Homeland Security,
                    *Respondents-Appellees.*

No. 05-16005

D.C. No.
CV-05-02023-CRB

OPINION

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted
February 12, 2007—San Francisco, California

Filed August 24, 2007

Before: J. Clifford Wallace, Dorothy W. Nelson, and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge McKeown;
Concurrence by Judge Wallace

10469

**COUNSEL**

James Todd Bennett, El Cerrito, California, for the petitioner-appellant.

Peter D. Keisler, Assistant Attorney General, Civil Division; David J. Kline, Principal Deputy Director, Office of Immigration Litigation, Washington, D.C.; and Papu Sandhu, Senior Litigation Counsel, Office of Immigration Litigation, Washington, D.C., for the respondents-appellees.

Lee, Gelernt, American Civil Liberties Union, Immigrants' Rights Project, New York, New York, for amicus curiae American Civil Liberties Union Foundation.

**OPINION**

McKEOWN, Circuit Judge:

Amarjeet Singh, a native and citizen of India, brought three ineffective assistance of counsel ("IAC") claims through a

habeas petition filed with the district court pursuant to 28 U.S.C. § 2241. Singh's habeas petition was filed after the enactment of the REAL ID Act, Pub. L. No. 109-13, § 106, 119 Stat. 231, 310-311 (2005). The district court dismissed the action for lack of subject matter jurisdiction on the ground that the REAL ID Act foreclosed Singh's habeas claims.

The REAL ID Act dramatically changed the means for judicial review of an order of removal. The Act provides that a petition for review in the court of appeals is "the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). This case raises an important jurisdictional question about the impact of the REAL ID Act on a writ of habeas corpus sought by an alien petitioner claiming ineffective assistance of counsel because of an untimely appeal to this court. The briefing on this issue has been extensive and the parties have explored the constitutional contours of the Act's repeal of the old judicial review rubric in the Immigration and Nationality Act ("INA").[1]

With respect to Singh's first claim, which relates to his former attorney's conduct arising prior to the administrative proceedings, we affirm the district court's dismissal because Singh did not exhaust his administrative remedies. *See Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005) ("We may affirm the district court on any basis supported by the record.").

As for Singh's second claim, which relates to his former attorney's failure to file a timely petition for review with this court, the district court does have jurisdiction over that claim and thus we reverse and remand. We do not reach Singh's third claim, which piggybacks on the validity of the second claim. Our decision rests solely on the interpretation of the

---

[1]The American Civil Liberties Union participated as *amicus curiae* in oral argument and supplemental briefing, limited to the jurisdictional questions raised by the REAL ID Act.

REAL ID Act's jurisdictional provisions. We do not reach the constitutional claims nor do we offer any judgment on the merits of Singh's claims. We hold that a narrow claim of ineffective assistance of counsel in connection with a post-administrative filing of an appeal with the court of appeals does not require review of an order of removal. Thus, this claim falls outside the jurisdiction-stripping provisions of the REAL ID Act.

## BACKGROUND

### I. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS[2]

The merits of Singh's IAC claims are not before us. Nonetheless, to address the jurisdictional and exhaustion questions, it is useful to delineate in some detail the nature and timing of the attorney conduct underlying each of the claims. The long and twisted path from the Immigration Judge ("IJ") to the Board of Immigration Appeals ("BIA") and back and forth to this court, and then to the district court, requires some patience to delineate.

### A. LAWYER 1: ASYLUM APPLICATION

Singh entered the United States on February 15, 1996 on a non-immigrant visa. After overstaying his visa, Singh applied for political asylum and withholding of removal on April 30, 1996. Singh hired a lawyer ("Lawyer 1") to file his application for asylum and for withholding of removal. Singh's first claim is that the "legal representative" of Lawyer 1 made

---

[2]The BIA acknowledges and adjudicates IAC claims in immigration proceedings. We note that although alien petitioners do not have a Sixth Amendment right to counsel, precedent in this circuit permits IAC claims as a due process challenge under the Fifth Amendment. *See Ortiz v. INS*, 179 F.3d 1148, 1153 (9th Cir. 1999). This claim is not coextensive with a Sixth Amendment challenge and, as our cases reflect, the contours of the claim depend on the factual circumstances. *But see Magala v. Gonzales*, 434 F.3d 523, 526 (7th Cir. 2005).

material changes to Singh's asylum application without his consent in order to present a stronger claim for relief.

## B. LAWYER 2: REMOVAL PROCEEDING, MOTION TO REOPEN, AND FIRST PETITION FOR REVIEW

Singh retained a different lawyer ("Lawyer 2") to represent him at the removal proceeding. The IJ denied Singh asylum and withholding of removal, but granted voluntary departure. Singh, through Lawyer 2, filed a timely appeal of the IJ's decision with the BIA, which affirmed the IJ's decision and issued a final order of removal on October 3, 2001.

On December 13, 2001, after missing the 30-day deadline for filing a petition for review with this court,[3] Lawyer 2 filed a timely motion to reopen with the BIA,[4] stating that neither he nor Singh had received the BIA's decision. Singh's motion to reopen requested that the BIA reissue its decision with a later date so that Singh could file a timely petition for review. On the same day, Lawyer 2 also filed a late petition for review with this court. We denied Singh's petition for review on the basis that the court lacked jurisdiction due to the untimeliness of the petition. *Singh v. INS*, No. 01-71878 (9th Cir., Feb. 15, 2002). Singh's second claim is that Lawyer 2 was incompetent in failing to file a timely petition for review with this court.

---

[3] 8 U.S.C. § 1252(b)(1) ("The petition for review must be filed not later than 30 days after the date of the final order of removal.").

[4] 8 C.F.R. § 1003.2(c)(2) ("[A] party may file only one motion to reopen deportation or exclusion proceedings (whether before the Board or the Immigration Judge) and that motion must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened . . . .").

### C. LAWYER 3: SECOND AND THIRD PETITIONS FOR REVIEW AND UNTIMELY MOTION TO REOPEN/RECONSIDER WITH THE BIA

On April 22, 2002, the BIA concluded that there was no evidence of mailing error and denied the motion to reopen filed by Lawyer 2. Singh's new lawyer ("Lawyer 3") appealed the BIA's denial of the motion to reopen in a second petition for review. In this petition, Lawyer 3 argued that Lawyer 2 provided Singh ineffective assistance by failing to file a timely petition for review of the final order of removal. We denied the petition for review, holding that the BIA did not abuse its discretion in denying the motion to reopen because it mailed notice to the last address provided by counsel. *Singh v. INS*, No. 02-71360 (9th Cir., Sept. 15, 2003). We declined to reach the ineffective assistance claim as to Lawyer 2 because that claim had not been presented first to the BIA. *Id.*

On June 11, 2002, Lawyer 3 filed an untimely[5] motion to reopen/reconsider with the BIA. *See* 8 C.F.R. § 1003.2. In this motion, Lawyer 3 argued that the first motion to reopen filed by Lawyer 2 on December 13, 2001, should not count as a motion to reopen because no new facts had been presented as required by 8 C.F.R. § 1003.2(c)(1). In addition, the motion alleged, once again, that Lawyer 2 had provided ineffective assistance. The BIA denied this motion on the grounds that the motion was untimely, and that Singh had not satisfied the procedural requirements set forth in *Matter of Lozada*.[6] Law-

---

[5]A motion to reconsider must be filed with the BIA "within 30 days after the mailing of the Board decision." 8 C.F.R. § 1003.2(b)(2).

[6]Under *Matter of Lozada*, an alien alleging ineffective assistance of counsel generally must: (1) submit an affidavit demonstrating and explaining his agreement with prior counsel regarding legal representation, (2) submit evidence that he has informed prior counsel of the allegations of ineffective assistance and provided the attorney with an opportunity to respond, and (3) file a complaint against the attorney with proper disciplinary authorities or explain why such a complaint has not been filed. 19 I. & N. Dec. 637, 639 (BIA 1988).

yer 3 then filed a third petition for review, appealing the BIA's denial of the motion to reopen/reconsider. We denied this petition, holding that the questions raised by the petition "are so insubstantial as not to require further argument." *Singh v. Gonzales*, No. 03-71681 (9th Cir. Feb. 7, 2005). Singh's third claim is that Lawyer 3 failed to effectively pursue an IAC claim against Lawyer 2.

## II. SINGH'S HABEAS PETITION

On May 18, 2005, Singh's fourth and current attorney filed a habeas petition in the United States District Court for the Northern District of California, alleging unlawful detention in violation of his Fifth Amendment right to due process. The district court dismissed the action for lack of jurisdiction under the REAL ID Act. On appeal, Singh argues that the REAL ID Act did not deprive the district court of jurisdiction over his IAC claims. In the alternative, Singh argues that if the REAL ID Act eliminated habeas review over his claims, the Act violates the Suspension Clause and the equal protection and due process guarantees of the Fifth Amendment.

## ANALYSIS

## I. SINGH'S CLAIM AGAINST LAWYER 1

[1] Singh's first IAC claim, which arose prior to his hearing before the IJ, is barred by his failure to exhaust administrative remedies, and we need not decide whether the REAL ID Act precludes habeas review of this claim. *See* 8 U.S.C. § 1252(d)(1).

At the time Singh retained Lawyer 2 to represent him at the removal hearing, the facts surrounding the allegedly ineffective representation by Lawyer 1 were known to Singh. Thus, Singh should have raised this issue before the IJ or the BIA on direct review. His failure to do so constitutes a failure to exhaust administrative remedies and he may not raise this

claim for the first time before a federal court. *See Sun v. Ashcroft*, 370 F.3d 932, 944 & n.18 (9th Cir. 2004) (holding that § 1252(d)(1) applies to alien habeas petitioners).

Singh's only response to this well-settled rule of exhaustion is that he cannot now satisfy the administrative exhaustion requirement because the only remedy that is now available to him with respect to his claim against Lawyer 1 is a motion to reopen, and such a motion is now time-barred and numerically-barred. This argument misses the mark, as Singh could have presented his first claim of IAC before the IJ and the BIA on direct appeal. *Cf. Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) ("The purposes of the exhaustion requirement . . . would be utterly defeated if the prisoner were able to obtain federal habeas review simply by 'letting the time run' so that state remedies were no longer available." (citation omitted)). We have held that time and numerical limitations on motions to reopen may be subject to equitable tolling. *See, e.g.*, *Ray v. Gonzales*, 439 F.3d 582, 590 (9th Cir. 2006); *Iturribarria v. INS*, 321 F.3d 889, 897-99 (9th Cir. 2003). But where, as here, an alien petitioner fails to pursue an administrative remedy without excuse,[7] he may not "bypass the administrative scheme that is in place to deal with [such] claims" by presenting the claim for the first time in a habeas petition. *See Gama Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007).

## II. Singh's Claim against Lawyer 2

### A. Res Judicata

**[2]** Singh's claim of Lawyer 2's alleged default faces a dif-

---

[7]Because Singh was represented by Lawyers 2 and 3, both of whom he now alleges were ineffective in representing him, one might query whether the habeas petition was his first opportunity to raise this claim. However, Singh has never alleged that Lawyers 2 and 3 were ineffective in failing to pursue an IAC claim against Lawyer 1.

ferent initial hurdle than his first IAC claim. The government contends that Singh's claim against Lawyer 2 is barred by res judicata because he already raised this claim in his second petition for review filed on May 22, 2002, as well as in his motion to reopen/reconsider filed with the BIA on June 11, 2002. The government never asserted res judicata as a defense in the district court. We therefore deem this defense to be waived. *See* Fed. R. Civ. P. 8(c); *Rotec Industries, Inc. v. Mitsubishi Corp.*, 348 F.3d 1116, 1119 (9th Cir. 2003) ("Since the defense is not one of jurisdiction, [res judicata] generally cannot be raised for the first time on appeal.").

**[3]** Even if the government had not waived the right to assert the defense of res judicata, this argument fails on the merits. The government's position ignores the fact that on each occasion in which Singh attempted to raise his claim against Lawyer 2, he was represented by Lawyer 3—the very same counsel whom he now claims was also ineffective. There has never been a final judgment on the merits with respect to Singh's IAC claim against Lawyer 2. *See Valencia-Alvarez v. Gonzales*, 469 F.3d 1319, 1323-24 (9th Cir. 2006) ("The criteria for the application of res judicata . . . are that there be a *final* judgment, rendered *on the merits in a separate action*." (emphasis in original)). In our 2003 decision, we expressly declined to address the IAC claim because it had not been procedurally exhausted. Our 2005 decision affirmed the BIA's refusal to adjudicate the IAC claim, once again, because of Lawyer 3's failure to satisfy the procedural requirements of *Lozada*.

Under these circumstances, the application of res judicata is not appropriate.[8] *Cf. Gutierrez-Morales v. Homan*, 461 F.3d

---

[8]In *Nunes v. Ashcroft*, we held that a merits dismissal of an issue on direct review precluded the alien from raising the same issue in a habeas proceeding. 375 F.3d 805, 809-10 (9th Cir. 2003). *Nunes* presented a very different scenario than that of Singh because in that case, the issue before the district court on habeas review had already been decided on the merits by this court. *See id.* at 810 ("[W]e hold that Nunes may not relitigate in district court our decision that he is an aggravated felon.").

605, 608 (5th Cir. 2006) ("Although this is [petitioner's] third trip through the [Fifth Circuit], we find that he could not have presented his ineffective assistance of counsel claim until now.").

### B.   Habeas Jurisdiction under the REAL ID Act

**[4]** We next consider a question of first impression—whether the REAL ID Act precludes habeas review of IAC claims that arise from an attorney's failure to file a timely petition for review of the BIA's decision. When Congress enacted the jurisdiction-stripping provisions of the REAL ID Act in 2005, it was not writing on an empty slate. Rather, Congress was reacting to what it perceived as a troubling development in immigration case law. In analyzing the jurisdictional effect of the REAL ID Act on Singh's second claim, it is helpful to consider the legal landscape in which Congress was legislating. Thus we preface our analysis with a brief discussion of the relevant statutory background. *See generally Henderson v. INS*, 157 F.3d 106, 112-17 (2d Cir. 1998) (providing historical overview of changes to judicial review in the INA prior to the enactment of the REAL ID Act).

### 1.   Statutory Background

Between 1961 and 1996, the INA provided that courts of appeals "shall be the sole and exclusive" forum for judicial review of orders of deportation. H.R. Rep. No. 109-72, at 172 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 240, 297. Congressional intent was to abbreviate the process of judicial review by eliminating "the previous initial step in obtaining judicial review—a suit in a District Court." *Foti v. INS*, 375 U.S. 217, 225 (1963). Habeas review remained available to a limited class of aliens, including those being held in detention and those subject to orders of exclusion.[9] *See* H.R. Rep. No.

---

[9]"Prior to the 1996 amendments, the law distinguished between deportation and exclusion proceedings. Aliens who were physically present in the

87-1086 (1961), *as reprinted in* 1961 U.S.C.C.A.N. 2950, 2966. This system was designed to ensure that "no alien who has once had his day in court, with full rights of appeal to the higher courts, should be permitted to block his removal and cause unnecessary expense to the Government by further judicial appeals, the only purpose of which is delay." *Id.* at 2968. In 1996, Congress sought to further streamline immigration proceedings by enacting the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3546 (1996). Through these two Acts, Congress repealed the provision allowing habeas review for certain aliens. In addition, Congress eliminated *all* forms of judicial review of deportation orders against certain classes of criminal aliens. H.R. Rep. No. 109-72, at 172 (discussing history of AEDPA and IIRIRA regarding habeas review).

**[5]** The IIRIRA also added § 1252(b)(9) to Title 8, a consolidation provision known as the "zipper" clause. *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). This section is a " 'zipper clause' in the sense that it consolidates or 'zips' 'judicial review' of immigration proceedings into one action in the court of appeals." *Mahadeo v. Reno*, 226 F.3d 3, 12 (1st Cir. 2000) (discussing INA § 242(b)(9), codified at 8 U.S.C. § 1252(b)(9)); *see also Flores-Miramontes v. INS*, 212 F.3d 1133, 1140-41 (9th Cir. 2000) (explaining the legislative history of § 1252(b)(9)). Through this section, "Congress made clear that review of a final removal order is the only mechanism for reviewing any

---

United States were placed into deportation proceedings. Exclusion proceedings dealt with aliens who were literally at the border seeking entry as well as those who had been physically paroled into the country but who, through a legal fiction, remained for immigration purposes at the border. The [Illegal Immigration Reform and Immigrant Responsibility Act of 1996] combined the two proceedings into a new process known as a 'removal proceeding.' " *Henderson*, 157 F.3d at 111 n.5 (citations omitted).

issue raised in a removal proceeding." H.R. Rep. No. 109-72, at 173.

Despite these efforts by Congress to streamline and to place statutory limitations on judicial review, the Supreme Court expanded judicial review for criminal aliens just five years later. In *INS v. St. Cyr*, the Court held that criminal aliens could challenge their removal orders in a habeas proceeding given "the absence of . . . a forum" to review their claims if habeas were deemed to be unavailable, "coupled with the lack of a clear, unambiguous, and *express* statement of congressional intent to preclude judicial consideration on habeas." 533 U.S. 289, 314 (2001) (emphasis added). The Court held that there would be a "serious Suspension Clause issue"[10] if the 1996 reforms were read to withdraw all forms of review over claims of criminal aliens. *Id.* at 305. The ultimate effect of the decision in *St. Cyr* was to allow criminal aliens more judicial review than they had before the 1996 reforms, and more review than accorded to non-criminal aliens. H.R. Rep. No. 109-72, at 173.

**[6]** Congress enacted § 106 of the REAL ID Act to "address the anomalies created by *St. Cyr* and its progeny" by restoring judicial review "to its former settled forum prior to 1996." *Id.* at 174. To achieve these goals, the REAL ID Act expressly eliminated habeas review over all final orders of removal, but restored to the appellate courts jurisdiction over "constitutional claims or questions of law" in all cases—criminal and non-criminal. 8 U.S.C. § 1252(a)(2)(D). As described by the Third Circuit, "[t]hese modifications effectively limit *all* aliens to one bite of the apple with regard to challenging an *order of removal*." *Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005) (emphasis added).

---

[10]Article I, § 9, cl. 2, of the U.S. Constitution provides: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."

## 2. Title 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9)

The starting point for any statutory interpretation is the language of the statute itself. *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685 (1985); *United States v. Hoffman*, 794 F.2d 1429, 1431 (9th Cir. 1986). Although statutory titles are not part of the legislation, they may be instructive in putting the statute in context. *See Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) ("[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute." (quotation marks and citation omitted)). The title of § 1252 is "Judicial review of orders of removal." Indeed, the entire section is focused on orders of removal.

[7] Sections 1252(a)(5) and 1252(b)(9) are particularly significant to our analysis. Section 1252(a)(5) (titled "Exclusive means of review"), a new provision added to the INA by § 106(a)(1)(A)(iii) of the REAL ID Act, states:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for *judicial review of an order of removal* entered or issued under any provision of this chapter, except as provided in subsection (e) of this section.

8 U.S.C. § 1252(a)(5) (emphasis added).

Section 1252(b)(9) (titled "Consolidation of questions for judicial review"), as we have noted earlier, was originally enacted by IIRIRA in 1996 to serve as a "zipper clause." As originally enacted, § 1252(b)(9) stated:

Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9) (1997).

**[8]** The only change that the REAL ID Act imposed on § 1252(b)(9) was to add the following language explicitly prohibiting habeas review:

Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28, or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9) (2007).

**[9]** By virtue of their explicit language, both §§ 1252(a)(5) and 1252(b)(9) apply only to those claims seeking judicial review of orders of removal. Section 1252(a)(5) is prominently directed to "judicial review of an order of removal." Section 1252(b)(9) explicitly covers "any action taken or proceeding brought to remove an alien." To the extent that this language could be viewed as broader than § 1252(a)(5), as argued by the government, we are guided by the Supreme Court. In *St. Cyr*, the Court confirmed that § 1252(b)(9) "applies *only* 'with respect to review of an *order of removal* under [8 U.S.C. § 1252(a)(1)].' " 533 U.S. at 313 (emphasis added) (citing 8 U.S.C. § 1252(b)).[11] The Court further

---

[11]Congress' purpose in enacting § 1252(b)(9) in 1996 was simply "to consolidate judicial review of immigration proceedings into one action in

emphasized, "[s]ubsection (b)(9) simply provides for the consolidation of issues to be brought in petitions for '[j]udicial review' . . . ." *Id.* The language added by the REAL ID Act does nothing to change or undermine that analysis.

The legislative history of the REAL ID Act is consistent with this conclusion. According to the House Conference Report on the REAL ID Act, "[u]nlike AEDPA and IIRIRA, which attempted to eliminate judicial review of criminal aliens' removal orders, section 106 would give every alien one day in the court of appeals, satisfying constitutional concerns [expressed in *St. Cyr*]." H.R. Rep. No. 109-72, at 175. The House Report concluded, "[m]oreover, section 106 would not preclude habeas review over challenges to detention that are *independent of challenges to removal orders*. Instead, the bill would eliminate habeas review *only over challenges to removal orders*." *Id.* (emphasis added).

Post-REAL ID Act cases considering the applicability of § 1252 have also distinguished between challenges to orders of removal and challenges that arise independently. *See e.g., Puri v. Gonzales*, 464 F.3d 1038, 1041 (9th Cir. 2006) (holding that "the REAL ID Act's jurisdiction-stripping provisions . . . does [sic] not apply [if the] claim is *not a direct challenge to an order of removal*" (emphasis added)); *Kumarasamy v. Att'y Gen.*, 453 F.3d 169, 172 (3d Cir. 2006) (holding that an

---

the court of appeals." *St. Cyr*, 533 U.S. at 313 (internal quotation marks omitted); *see also Calcano-Martinez v. INS*, 232 F.3d 328, 340 (2d Cir. 2000) ("Congress enacted [§ 1252(b)(9)] for the important purpose of consolidating all claims that may be brought in removal proceedings into one final petition for review of a final order in the court of appeals."). That the REAL ID Act now precludes habeas review of "questions of law or fact" arising from "action taken or proceeding brought to remove an alien" simply means that if the alien fails to consolidate his claims as required under § 1252(b)(9), he may not later bring a separate habeas claim to raise "questions of law or fact" that should have been brought as part of a challenge to his final order of removal.

alien who is challenging the legality of removal because he allegedly never received notice of his removal order is "not seeking review *of* an order of removal"); *Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1366 (11th Cir. 2006) (holding that a "petitioner who contests the very existence of an order of removal does not seek 'review of an order of removal' within the meaning of the REAL ID Act"); *Ali v. Ashcroft*, 421 F.3d 795, 797 n.1 (9th Cir. 2005) (order denying reh'g) (noting that jurisdiction-stripping provisions of the REAL ID Act do not apply to a claim that petitioners may not be removed to a country that does not have a functioning government, "because petitioners do not challenge or seek review of any removal order").

**[10]** Therefore, the question before us is whether Singh's second IAC claim is a claim that seeks review of a final order of removal within the meaning of § 1252. An "order of removal" means "the order of the special inquiry officer, or other such administrative officer to whom the Attorney General has delegated the responsibility for determining whether an alien is deportable, concluding that the alien is deportable or ordering deportation." *See* 8 U.S.C. § 1101(a)(47)(A); *Molina-Camacho v. Ashcroft*, 393 F.3d 937, 940 (9th Cir. 2004) (noting that 8 U.S.C. § 1101(a)(47)(A), which defines "order of deportation," now applies to orders of removal as well), *overruled on other grounds by Lolong v. Gonzales*, 484 F.3d 1173 (9th Cir. 2007); *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 882-83 (9th Cir. 2003). An order of removal becomes final upon the earlier of "(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B).

**[11]** At the time Lawyer 2 filed the late petition for review before this court, the removal order against Singh had become final. The alleged ineffective assistance of Lawyer 2 occurred *after* the issuance of the final order of removal, and the

claimed injury that Singh suffered as a result was the depriva-
tion of an opportunity for direct review of the order of
removal in the court of appeals. Thus, even assuming the dis-
trict court permits Singh's habeas petition to proceed and
determines that Lawyer 2 provided ineffective assistance in
failing to file a timely appeal, Singh's only remedy would be
the restarting of the thirty-day period for the filing of a peti-
tion for review with this court. *See Dearinger ex rel. Volkova
v. Reno*, 232 F.3d 1042, 1044 (9th Cir. 2000) ("The district
court granted the petition and ordered the government to reen-
ter the BIA's order denying the appeal and restart the thirty-
day period for filing the petition for review in the court of
appeals."). In other words, a successful habeas petition in this
case will lead to nothing more than "a day in court" for Singh,
which is consistent with Congressional intent underlying the
REAL ID Act. For these reasons, Singh's second IAC claim
cannot be construed as seeking judicial review of his final
order of removal, notwithstanding his ultimate goal or desire
to overturn that final order of removal.

The government contends that the BIA has authority to
remedy the type of IAC claim that Singh has alleged against
Lawyer 2 through reissuance of the BIA's original decision,
thereby allowing the clock to begin ticking anew for the filing
of a timely petition for review. That Singh may have an alter-
native avenue for relief does not change our statutory analy-
sis. Our decision is limited to the question of jurisdiction in
the district court. On remand, we cannot predict what proce-
dural or substantive hurdles Singh might face, such as his fail-
ure to comply with the procedural requirements of *Lozada*.[12]

---

[12]*Dearinger* held only that where, as here, an alien is prevented from fil-
ing an appeal in an immigration proceeding due to counsel's error, the
alien may seek habeas review in a district court without filing a motion to
reopen. 232 F.3d at 1045 n.4. *Dearinger* did not address the issue of
*Lozada*. Although the requirements of *Lozada* are not "rigidly applied,
especially when the record shows a clear and obvious case of ineffective
assistance," an alien generally must satisfy the procedural requirements of
*Lozada*. *Ray v. Gonzales*, 439 F.3d 582, 587-88 (9th Cir. 2006) (citing
*Rodriguez-Lariz v. INS*, 282 F.3d 1218, 1227 (9th Cir. 2002)).

We offer no judgment as to whether the district court will proceed with the claim on the merits or what additional administrative remedies may remain for Singh.

We do not take lightly Congress's general concern over the proliferation of habeas petitions in the immigration area. However, we can interpret that concern only in the context of specific statutory language. The maze of immigration statutes and amendments is notoriously complicated and has been described as "second only to the Internal Revenue Code in complexity." *Castro-O'Ryan v. U.S. Dep't of Immigration and Naturalization*, 847 F.2d 1307, 1312 (9th Cir. 1988) (quotation marks and citation omitted). The recent amendments under the REAL ID Act do not make our task any easier. Nonetheless, we assume that Congress is familiar with the intricacies of the overlapping laws and that it meant what it said when it directed the limitations on habeas relief to challenges to orders of removal. Our decision today is limited to a narrow class of cases that do not fall within the habeas restrictions of the REAL ID Act.

## Conclusion

**[12]** Sections 1252(a)(5) and 1252(b)(9) of Title 8 do not preclude habeas review over Singh's second IAC claim. In light of this conclusion, we decline to address the parties' dispute as to whether the REAL ID Act violates the Suspension Clause, and the due process and equal protection guarantees of the Fifth Amendment. *See Jean v. Nelson*, 472 U.S. 846, 854 (1985) ("Prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision." (quotation marks and citations omitted)).

**AFFIRMED in part, REVERSED and REMANDED in part.** Each party shall bear its own costs on appeal.

WALLACE, Senior Circuit Judge, concurring in part in the judgment:

I agree with the majority that Singh's claim against Lawyer 1 is barred because he did not exhaust administrative remedies, but I would remand the res judicata issue to the district court. Under the compulsion of precedent, I am required to agree with the majority's jurisdictional determination with respect to Singh's claim against Lawyer 2.

I write separately because I doubt there is a constitutional ineffective assistance doctrine that applies in immigration proceedings and recommend that our court reconsider the issue en banc. If there were no such constitutional right in this case, Singh could not show that "[h]e is in custody in violation of the Constitution . . . of the United States," 28 U.S.C. § 2241(c)(3), and the district court's dismissal of the claim against Lawyer 2 would not be error.

Because "deportation and removal proceedings are civil, they are not subject to the full panoply of procedural safeguards accompanying criminal trials, including the right to counsel under the Sixth Amendment." *Lara-Torres v. Ashcroft*, 383 F.3d 968, 973 (9th Cir. 2004) (quotations and citation omitted); *see also* 8 U.S.C. § 1362 (giving persons in removal proceedings "the privilege of being represented (at no expense to the Government) by . . . counsel[ ] authorized to practice in such proceedings"). Where "[t]here is no constitutional right to an attorney . . . . , a petitioner cannot claim constitutionally ineffective assistance of counsel." *Coleman v. Thompson*, 501 U.S. 722, 752 (1991). Singh bears the risk of Lawyer 2's error resulting in a procedural default. *See id.* at 752-53.

This makes sense because the effective assistance of counsel is not necessary to render immigration proceedings "full and fair," *Campos-Sanchez v. INS*, 164 F.3d 448, 450 (9th Cir. 1999) (quotations and citation omitted), which is all that

is required by the Fifth Amendment's due process guarantee. For Singh, "[t]he civil remedy is damages for malpractice, not a re-run of the original litigation." *Magala v. Gonzales*, 434 F.3d 523, 526 (7th Cir. 2005); *see also Mai v. Gonzales*, 473 F.3d 162, 165 (5th Cir. 2006) ("We may assume, without having to decide because the issue is not raised, that the Board's decision to allow aliens to claim ineffective assistance of counsel as a basis for reopening deportation proceedings is within the scope of the Board's discretionary authority even though it is probably not compelled by statute or the Constitution." (quotations and citation omitted)).

Our court has mistakenly incorporated a criminal case constitutional right into civil cases. This has unnecessarily complicated an already overburdened immigration enforcement process. I suggest our court reconsider this questionable rule.