# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3357

_____

| | | |
|---|---|---|
| Abdi Gelle Mohamed, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review |
| v. | * | of an Order of the |
| | * | Board of Immigration Appeals. |
| Alberto R. Gonzales, United | * | |
| States Attorney General, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: September 29, 2006
Filed:  November 27, 2006

_____

Before WOLLMAN, BOWMAN, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Abdi Gelle Mohamed, a convicted sex offender, resists removal to his native Somalia.  Mohamed's case has a tortuous path, from state probate court, to state criminal court, from six conferences with an immigration judge for removal proceedings, to the Board of Immigration Appeals, to this court on appeal, back to the Board, to federal district court for habeas proceedings, and finally to this court under the REAL ID Act of 2005, 8 U.S.C. § 1252(a)(5).

## I.

Mohamed illegally entered the United States in February 1998. He claims (1) to suffer from a mental illness, and (2) to be a member of the minority outcaste Midgan clan in Somalia. Mohamed maintains he experienced persecution in Somalia, including physical abuse. He was granted asylum despite entering this country illegally, but never became a lawful permanent resident.

In August 1998, Mohamed sexually molested a ten-year-old girl who lived in his apartment building in Minneapolis. Criminal proceedings stalled for more than two years while Mohamed was adjudged incompetent to stand trial. In May 2000, a probate court ordered him committed to the Minnesota Security Hospital. Mohamed was convicted in November 2000 of Criminal Sexual Conduct in the First Degree, Minn. Stat. § 609.342. He was sentenced to 32 months of imprisonment, followed by 16 months of supervised release. With credit for time served, Mohamed completed his prison sentence in April 2001, but thereafter remained at the Hospital.

The INS commenced removal proceedings in June 2001, charging Mohamed as an alien present in the United States without being admitted or paroled, 8 U.S.C. § 1182(a)(6)(A)(I), and as an alien convicted of a crime involving moral turpitude, 8 U.S.C. § 1182(a)(2)(A)(i)(I). Mohamed does not contest either that his entry was illegal or that his crime involves moral turpitude. Instead, Mohamed seeks withholding of removal under the Convention Against Torture. The IJ continued the removal hearing three times so Mohamed could obtain counsel, but he chose to proceed pro se. Because Mohamed was confined to the Hospital, hearings were by video conference. After the final removal hearing in August 2002, the IJ ordered Mohamed removed to Somalia.

Mohamed appealed to the Board of Immigration Appeals. Counsel entered his appearance in January 2003. Through counsel, Mohamed filed a brief, requested a hearing by a three-member panel, and moved to amend the brief. The Board affirmed without opinion in May 2003. Following Mohamed's appeal to this court, the Board *sua sponte* vacated the May decision, re-opened proceedings, and in November 2003 re-affirmed with a short per curiam. The Board acknowledged that Mohamed "is mentally ill," but found "no evidence in the record which convinces us that the respondent was unable to comprehend the nature of the [removal] proceedings." This court then dismissed Mohamed's petition for review without prejudice in December 2003.

While the Board proceedings and his first appeal to this court were pending, Mohamed petitioned for a writ of habeas corpus in federal district court. The court granted the petition on May 23, 2005, and ordered a new removal hearing to evaluate Mohamed's competency. *Mohamed v. TeBrake*, 371 F. Supp. 2d 1043 (D. Minn. 2005).

On May 11, 2005, the President signed the REAL ID Act, denying the writ of habeas corpus to an alien resisting a removal order. On August 2, 2005, over Mohamed's opposition, the district court amended its judgment, transferring the case to this court. This case is a petition for review of the Board's November 2003 decision.

## II.

Mohamed mainly advances an as-applied constitutional challenge to the REAL ID Act. This court reviews *de novo* constitutional questions and questions of law related to the IJ's order. *Flores v. Ashcroft*, 354 F.3d 727, 729 (8th Cir. 2003); *Amador-Palomares v. Ashcroft*, 382 F.3d 864, 866 (8th Cir. 2004).

The Constitution provides: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." **U.S. Const. art. I, § 9, cl. 2**. The REAL ID Act divests the federal courts of habeas jurisdiction of a removal order. "[A] petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review" of a removal order. **8 U.S.C. § 1252(a)(5)**. The term "judicial review" includes habeas petitions. *Id*.

Congress therefore must offer "a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention". *Swain v. Pressley*, 430 U.S. 372, 381 (1977). The substitute remedy must offer the same scope of review as a habeas proceeding. *Id.* at 381-82.

Mohamed bases his as-applied challenge to the REAL ID Act on the fact that this court cannot consider his commitment order, because it is not part of the record before this court. *See* **8 U.S.C. § 1252(b)(4)(A)** ("the court of appeals shall decide the petition only on the administrative record on which the order of removal is based"). Mohamed contends that essential to habeas review is the ability to offer evidence outside the record. Mohamed concludes that the Act does not provide an adequate and effective alternative to habeas review, and violates the Suspension Clause as applied to him.

Mohamed did not proffer the commitment order until this appeal. Mohamed could have introduced the order during the removal proceedings, on appeal to the Board (when he was represented by counsel), or through a motion to reopen under 8 U.S.C. § 1229a(c)(7). The district court on habeas review did quote the commitment order although it was not part of the administrative record. In this appeal, Mohamed has moved to amend the record to include the commitment order, which motion is denied. *See* ***Ming Ming Wijono v. Gonzales***, 439 F.3d 868, 875 n.4 (8th Cir. 2006) (citing 8 U.S.C. § 1252(b)(4)(A) to deny petitioner's motion to supplement to the administrative record with documents not presented to the IJ or to the Board).

-4-

This court is persuaded by *Alexandre v. U.S. Attorney General*, 452 F.3d 1204 (11th Cir. 2006). The petitioner there had the opportunity to add new evidence to the record by a motion to reopen with the Board, and the Eleventh Circuit found the REAL ID Act to be an adequate and effective substitute for habeas review. *Id*. at 1205-06. That Mohamed here failed to make such a motion, or otherwise to introduce the commitment order until now, does not make the remedy inadequate or ineffective as a matter of law. *See also* **Puri v. Gonzales**, 464 F.3d 1038, 1041-42 (9th Cir. 2006) (petitioner offered new evidence in motion for reconsideration; Act upheld against Suspension Clause challenge), **Enwonwu v. Gonzales**, 438 F.3d 22, 32-33 (1st Cir. 2006) (petitioner's motion to reopen rejected as untimely, but presented only questions of law and not of fact; in dicta court stated that "the Act encompasses at least the same review and the same relief as to Enwonwu as were available under prior habeas law.").

This court may review all constitutional claims and questions of law in the removal order, 8 U.S.C. § 1252(a)(2)(D). Congress has created a remedy as broad in scope as a habeas petition. It is an adequate and effective substitute to test the legality of a person's detention. *See* **Swain**, 430 U.S. at 381-82; *see also* **INS v. St. Cyr**, 533 U.S. 289, 314 n.38 (2001) ("As to the question of timing and congruent means of review, we note that Congress could, without raising any constitutional questions, provide an adequate substitute [to replace habeas proceedings for aliens resisting a removal order] through the courts of appeals.").

III.

Mohamed argues that the IJ's failure to hold a competency hearing violated his Fifth Amendment right to procedural due process. This right requires "the opportunity to be heard at a meaningful time and in a meaningful manner." **Mathews v. Eldridge**, 424 U.S. 319, 333 (1976). A mentally incompetent person, although physically present, is absent from the hearing for all practical purposes. *See* **Drope v. Missouri**, 420 U.S. 162, 171 (1975). The test for mental competence in a criminal case is whether an individual possesses "the ability to comprehend the nature and object of

the proceedings against him, to consult with counsel, and to assist in preparing his defense. . . ." *Id*. The precise contours of procedural due process depend on the circumstances of the case and require consideration of several factors: the public and private interests at stake and the risk of an erroneous deprivation. *Mathews*, 424 U.S. at 335.

A mentally incompetent alien may be represented at a removal hearing by his "attorney, legal representative, legal guardian, near relative, or friend who was served with a copy of the notice to appear". **8 C.F.R. § 1240.4**. Failing these, the custodian "shall be requested to appear on behalf" of the alien. *Id*. The district court that granted Mohamed's habeas petition held that it was an "abuse of discretion" for the IJ not to hold a competency hearing, and avoided the constitutional issue altogether. *Mohamed v. TeBrake*, 371 F. Supp. 2d 1043, 1047 (D. Minn. 2005).

At his hearings, Mohamed answered the charges against him, testified in support of his claim for withholding of removal, and arranged for two witnesses to appear on his behalf. The transcripts show an individual who is aware of the nature and object of the proceedings and who vigorously resists removal. The lack of a competency hearing was not an abuse of discretion and did not violate Mohamed's right to procedural due process.[1]

IV.

Mohamed also asserts due process violations in the interpreter's inability twice to translate the Somali word for "schizophrenia" into English, and in the failure of the video equipment to depict the scars on his back. To prevail, Mohamed must establish prejudice, i.e., a showing "that the outcome of the proceedings may well have been

---

[1] Mohamed unsuccessfully presented this claim to the Board. In ruling on Mohamed's appeal of the IJ's decision and finding no evidence of incompetency, the Board did not engage in "de novo factfinding," as Mohamed argues. Rather, the Board based its decision on the evidence already in the record.

different had the due process violation not occurred." ***Ismail v. Ashcroft***, 396 F.3d 970, 974-75 (8th Cir. 2005).

The record contains numerous references to the existence and specific nature of Mohamed's mental illness. In his order, the IJ noted that Mohamed had been "hearing voices" since the age of fifteen. Mohamed was not prejudiced by two one-word translation failures. As to the scars, they were described to the IJ, who found them as facts. The IJ concluded, based on inconsistencies in Mohamed's testimony, that the scars did not result from torture as defined by the Convention Against Torture. The cause of the scars, not their quality, is the relevant issue. Mohamed fails to establish prejudice from any possible due process violation.

V.

Two witnesses testified for Mohamed at the removal hearing. One witness, whose sister is married to Mohamed's brother, testified that Mohamed is Midgan. The other witness testified that she knew Mohamed in Somalia some 15 years ago, and that he is Midgan, displayed signs of mental illness then, and was ostracized from the community and frequently beaten.

Mohamed argues that the IJ erred by not making explicit credibility findings as to these witnesses. An implicit credibility finding made in passing does not suffice. ***Lopez-Alvarado v. Ashcroft***, 381 F.3d 847, 851 (8th Cir. 2004). Rather, absent an explicit adverse credibility finding, a witness's testimony must be accepted as true. *Id*.

In his order the IJ commented that Mohamed offered "no objective corroborating evidence" to support his application for relief under the Convention Against Torture. The IJ made no explicit credibility finding but considered the witnesses' testimony insubstantial. Torture under the Convention is defined as "an extreme form of cruel and inhuman treatment intentionally inflicted by or with the acquiescence of a person acting in an official capacity." ***Sheikh v. Gonzales***, 427 F.3d

1077, 1082 (8th Cir. 2005) (citing 8 C.F.R. § 208.18). The witnesses described general ostracism and abuse at the hands of other Somalis, not torture by or with the acquiescence of the government.

VI.

An applicant for withholding of removal under the Convention bears the burden of proof "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." **8 C.F.R. § 208.16(c)(2)**. The IJ found incredible Mohamed's claims to be Midgan and to having been tortured, observing that Mohamed could find safe haven in the northern region of Somalia. The "very wide discrepancies between the various stories told" by Mohamed himself provide ample support for the IJ's order.

The judgment of the Board is affirmed.

_____