# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2859

_____

| | | |
|---|---|---|
| Aleksandr M. Skurtu, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review of an Order of |
| v. | * | the Board of Immigration Appeals. |
| | * | |
| Michael Mukasey, Attorney General | * | |
| of the United States, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: September 26, 2008
Filed: December 24, 2008

_____

Before WOLLMAN, SMITH, and GRUENDER, Circuit Judges.

_____

SMITH, Circuit Judge.

An immigration judge (IJ) ordered Alexander M. Skurtu removed to Moldova and subsequently denied Skurtu's application for withholding of removal and Convention Against Torture (CAT) protection. The Board of Immigration Appeals (BIA) adopted and affirmed the IJ's decision. More than 30 days later, Skurtu initiated a separate action styled a "Complaint" in federal district court. Skurtu's "Complaint" alleged that the IJ committed numerous errors and that the removal proceedings

violated Skurtu's Fifth Amendment due process rights. The district court[1] transferred the "Complaint" to this court, construing it as a petition for review under the REAL ID Act of 2005 ("Real ID Act"). For the reasons discussed below, we dismiss the "Complaint" for lack of subject matter jurisdiction.

## I. *Background*

Skurtu, a native and citizen of Moldova, was served with a Notice to Appear (NTA), charging him as removable under § 237(a)(2)(A)(iii) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(2)(A)(iii), for being convicted of an aggravated felony, and under § 237(a)(2)(A)(ii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(ii), for being convicted of two crimes involving moral turpitude not arising out of the same scheme of criminal misconduct. At the beginning of the removal process, the IJ informed Skurtu that he had the right to retain private counsel and gave Skurtu a list of legal aid attorneys from which Skurtu might seek legal counsel for a reduced cost or pro bono. Skurtu subsequently informed the IJ that these attorneys declined to provide representation. The IJ reminded Skurtu that he still had the right to obtain a lawyer before the removal hearing. Skurtu, nonetheless, represented himself at the removal hearing, and the IJ found Skurtu removable.

After the finding of removability, Skurtu declined to designate a country for removal, so the IJ designated his country of nativity and citizenship—Moldova. Skurtu then applied for withholding of removal and CAT protection. Skurtu stated that he was seeking relief based on his nationality. In the application, he stated that he had never been harmed and that he did not fear harm if he were returned to Moldova. At the hearing, the IJ inquired whether Skurtu had any evidence that he might be tortured if returned to Moldova, to which Skurtu replied, "I have no evidence." The IJ then clarified with Skurtu that, in fact, he had no evidence, to which Skurtu replied, "No."

---

[1]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

Skurtu also told the IJ, "When I tell I'm going to fear for my life, I will lie." In response to the IJ's subsequent questions, Skurtu replied that he had never been detained, interrogated, convicted, or sentenced in Moldova, nor had any of his family members.

Skurtu then called both of his parents to testify on his behalf. Skurtu asked the IJ if he could translate his father's testimony because his father does not speak fluent English; the IJ responded that Skurtu had not requested an interpreter and that one was not present. Skurtu then asked the IJ if Skurtu could translate if his father had a problem understanding, but the IJ instructed Skurtu that his father would have to speak in English. Skurtu's father testified that he did not know what would happen to Skurtu if he were returned to Moldova. Skurtu then questioned his mother, who also testified that she did not know what would happen to Skurtu if he were returned to Moldova.

In addition to Skurtu's and his parents' testimony, the IJ reviewed the State Department's Country Report on Human Rights Practices for Moldova and Skurtu's criminal record.

The IJ issued his oral decision on November 28, 2006. In his decision, the IJ noted that Skurtu bore the burden to prove that he was entitled to withholding of removal and CAT protection. The IJ found that Skurtu failed to present any evidence concerning past persecution, pointing out that he had specifically asked Skurtu "if in his native country either he or [his] family members were detained, interrogated, convicted, [or] sentenced to prison[,] and he said that they were not." The IJ also concluded that Skurtu failed to establish a well-founded fear of persecution, stating that "absolutely nothing in the record" supported a finding that Skurtu "faced any real problems based upon the five reasons given in the Act." The IJ also found that Skurtu failed to establish that it was more likely than not that he would be tortured if returned

to Moldova. Accordingly, the IJ ordered that Skurtu be removed from the United States to Moldova.

Thereafter, Skurtu appealed the IJ's decision to the BIA, arguing that the IJ ignored evidence of past persecution that some of his relatives had suffered in Moldova. He also asserted that he had a right to appointed counsel before the IJ; that his Eighth Amendment rights would be violated if he were returned to Moldova; and that the Communist government of Moldova would persecute him upon his return. Finally, he maintained that the IJ did not take into account the hardships that he would face if returned to Moldova. On February 27, 2007, the BIA adopted and affirmed the IJ's decision.

On May 1, 2007, Skurtu mailed a pleading entitled "Complaint" to the United States District Court for the District of Columbia. The "Complaint" was received on May 17, 2007, and filed on June 26, 2007. Thus, Skurtu's "Complaint" was filed over 30 days after the BIA issued its decision. The "Complaint" was docketed as a habeas corpus petition pursuant to 28 U.S.C. § 2255. The "Complaint" alleged, inter alia, that the IJ failed to inquire about or take into consideration the "persecution, abuse, discrimination, torture, and any life threatening situations of Petitioner's parents, grandparents, and Petitioner's aunts and uncles [or] what they faced while they were in Moldova." In addition, the "Complaint" alleged that the IJ failed to note "any other reasons for this Petitioner's family members becoming refugees from Moldova" and failed to ask his mother or father "about any abuses while the[y] were on the stand and under oath." It also stated that the IJ made "erroneous findings" and failed to take into consideration Skurtu's age at the time that he entered the United States. In addition to these claims, the "Complaint" alleged that the IJ denied Skurtu his right to appointed counsel and his right to a fair hearing due to the IJ's failure to fully and fairly develop the record.

Thereafter, the United States District Court for the District of Columbia transferred the "Complaint" to the United States District Court for the Eastern District of Missouri. That court then transferred the "Complaint" to this court as a petition for review, stating:

> This matter is before the Court upon its own motion. Petitioner seeks to overturn an order of removal deporting him to his native country, Moldova. This Court does not have jurisdiction to hear petitions challenging orders of removal. Pursuant to 8 U.S.C. § 1252, a "petition for review [must] be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." Petitioner's immigration proceedings took place in Potosi, Missouri. As a result, the Court will order the Clerk to transfer this case to the United States Court of Appeals for the Eighth Circuit.

## II. *Discussion*

On appeal, Skurtu challenges the BIA's summary affirmance of the IJ's decision and the IJ's order granting the Immigration and Naturalization Service's (INS) petition to remove Skurtu from the United States and denying Skurtu's claim for asylum, withholding of deportation, and relief under the CAT. Skurtu argues that he was denied his Fifth Amendment due process right to counsel during the removal proceedings and denied his Fifth Amendment due process right to a fair hearing because of the IJ's failure to fully develop the record. Additionally, he asserts that the district court erred by treating his "Complaint" as a petition for review pursuant to the REAL ID Act and transferring it to this court instead of treating it as a habeas petition and retaining jurisdiction.

In response, the government argues that we lack jurisdiction to review Skurtu's "Complaint" and must dismiss the "Complaint" because it is an untimely petition for review, as Skurtu failed to file it within 30 days of the BIA's decision and equitable tolling does not apply.

-5-

A. *Whether Skurtu's "Complaint" Challenges an "Order of Removal"*

To properly determine whether we have subject matter jurisdiction over Skurtu's "Complaint," we must first determine whether Skurtu's "Complaint" effectively challenges the IJ's ultimate order of removal and falls within the purview of the REAL ID Act. If so, then the district court properly transferred Skurtu's case to this court, as this court is "the sole and exclusive means for judicial review of an order of removal." REAL ID Act, Pub. L. No. 109-13, Div. B, Title I, § 106(a), 119 Stat. 231, 310 (2005) (codified at 8 U.S.C. § 1252(a)(5)).

The REAL ID Act "place[s] exclusive review of orders of removal with circuit courts." *Haider v. Gonzales*, 438 F.3d 902, 905 (8th Cir. 2006). The Act amended 8 U.S.C. § 1252 to provide that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal. . . ." REAL ID Act § 106(a) (codified at 8 U.S.C. § 1252(a)(5)). As of the effective date of the Act, any pending habeas petitions challenging such removal orders before a district court, or on appeal to a court of appeals, were converted to petitions for review. *Kumarasamy v. Att'y Gen.*, 453 F.3d 169, 171 (3d Cir. 2006) (citing the REAL ID Act § 106(c); *Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005)); *see also Fernandez v. Keisler*, 502 F.3d 337, 346 (4th Cir. 2007) (finding that the REAL ID Act "expressly eliminated district courts' habeas jurisdiction over removal orders"); *Jahed v. Acri*, 468 F.3d 230, 233 (4th Cir. 2006) ("The REAL ID Act eliminated access to habeas corpus for purposes of challenging a removal order."). Pursuant to the Act, district courts must "transfer to the appropriate courts of appeals all § 2241 petitions challenging final orders of removal, deportation, or exclusion 'pending in a district court on the date of the enactment of [the Act].'" *Toledo-Hernandez v. Mukasey*, 521 F.3d 332, 333 (5th Cir. 2008) (quoting the REAL ID Act § 106(c)) (alteration in *Toledo-Hernandez*).

We have previously addressed a district court's decision to transfer an alien's habeas corpus case to this court. *Haider*, 438 F.3d at 910. In *Haider*, the INS initiated

removal proceedings against the alien by personally serving him with an NTA, which ordered the alien to appear before an IJ "'on a date to be set at a time to be set to show why [the alien] should not be removed from the United States.'" *Id*. at 904 (quoting Certified Admin. Rec. at 551). The NTA specifically instructed the alien that failure to keep his address current could result in his removal in absentia, and the agent who served the alien with the NTA informed the alien of the consequences of failing to appear. *Id*. Thereafter, the alien moved but neglected to notify the INS of his change of address. *Id*. A Notice of Hearing in Removal Proceedings was mailed to the alien at the address listed on the NTA. *Id*. When the alien failed to appear at his removal hearing, the IJ held an in absentia hearing and ultimately entered a removal order against the alien. *Id*. When the alien learned of the order of removal, he filed a motion to reopen, arguing that he did not receive notice of the removal hearing. *Id*. The IJ denied the motion. *Id*. at 905. The alien appealed to the BIA, arguing that he had not received the required notice of the date and time of the removal hearing, in violation of his due process rights, but the BIA rejected his argument. *Id*. Subsequently, the alien filed a petition for review with this court. *Id*. The alien also filed a petition for writ of habeas corpus in federal district court, asserting that the INS had failed to provide him with a valid NTA. *Id*. But the district court transferred the matter to this court because it was "'left with the inescapable conclusion that [the alien's] challenge to the constitutionality of the notice provided to him, is, in effect, a challenge to the ultimate Order of Removal.'" *Id*. at 910 (quoting Report & Recommendation at 8).

On appeal, the alien challenged, inter alia, the district court's decision to transfer his habeas case to this court. *Id*. We first noted that the petition for review that the alien had filed with this court vested in us "the sole and exclusive means for judicial review" of the removal order. *Id*. (internal quotations and citation omitted). We agreed with the district court that the alien was essentially making the same argument in his petition for writ of habeas corpus that he made in his petition for review—"that the in absentia removal order was invalid due to lack of notice." *Id*. As a result, we held that because the alien's habeas petition did "nothing more than attack the IJ's removal

order, our Court 'shall be the sole and exclusive means for judicial review.'" *Id.* Thus, the district court properly complied with the REAL ID Act by transferring the alien's habeas case to this court. *Id.*; *see also Codina v. Chertoff*, 283 Fed. Appx. 432, 433 (8th Cir. 2008) (unpublished per curiam) (affirming the district court's dismissal of the alien's § 2241 petition for a writ of habeas corpus, finding that "[t]o the extent [the alien's] petition challenged her detention based on alleged procedural and clerical flaws in her removal proceedings, it essentially challenged her removal order, which the district court lacked jurisdiction to review in a habeas proceeding").

We find *Haider* controlling, as Skurtu's "Complaint" attacks the IJ's order of removal, therefore vesting this court with the "sole and exclusive means for judicial review." Skurtu concedes in his brief that his "Complaint" "asserted claims that he was denied Fifth Amendment due process in connection with the removal proceedings, as well as an attack on the removal order itself." For example, in his "Complaint," Skurtu alleged that the IJ failed to inquire about or take into consideration the "persecution, abuse, discrimination, torture, and any life threatening situations of Petitioner's parents, grandparents, and Petitioners' aunts and uncles [or] what they faced while they were in Moldova." In addition, Skurtu asserted that the IJ failed to note "any other reasons for this Petitioner's family members becoming refugees from Moldova" and failed to ask his mother or father "about any abuses while the[y] were on the stand and under oath." He also asserted that the IJ made "erroneous findings" and failed to take into consideration his age at the time that he entered the United States. Such allegations unmistakably implicate the order of removal.

Nevertheless, Skurtu argues that, to the extent that he asserted in his "Complaint" a denial of the right to appointed counsel and denial of a fair hearing due to the IJ's failure to fully and fairly develop the record, he was not asking for a review of the removal order itself. He relies on the Ninth Circuit's holding in *Singh v. Gonzales*, 499 F.3d 969, 972 (9th Cir. 2007), "that a narrow claim of ineffective assistance of counsel in connection with a post-administrative filing of an appeal with

-8-

the court of appeals does not require review of an order of removal. Thus [such a] claim falls outside the jurisdiction-stripping provisions of the REAL ID Act." In *Singh*, the alien brought ineffective assistance of counsel claims through a habeas petition filed with the district court. *Id*. at 971. The district court dismissed the claims for lack of subject matter jurisdiction, concluding that the REAL ID Act foreclosed the alien's habeas claims. *Id*.

On appeal, the Ninth Circuit addressed whether the REAL ID Act precluded its habeas review of an ineffective assistance of counsel claim arising from an attorney's failure to file a timely petition for review of the BIA's decision. *Id*. at 975. The court concluded that both §§ 1252(a)(5) and 1252(b)(9) of 8 U.S.C., by their plain language, apply to only those claims seeking judicial review of orders of removal. *Id*. at 978. ("Section 1252(a)(5) is prominently directed to 'judicial review of an order of removal.' Section 1252(b)(9) explicitly covers 'any action taken or proceeding brought to remove an alien.'"). The court also cited legislative history, demonstrating that § 106 of the REAL ID Act "'would not preclude habeas review over challenges to detention that are *independent of challenges to removal orders*.'" *Id*. (quoting H.R. Rep. No. 109-72, at 175, *reprinted in* 2005 U.S.C.C.A.N. 240, 299) (emphasis added in *Singh*). The court then inquired into the definition of "order of removal," finding the phrase to mean "'the order of the special inquiry officer, or other such administrative officer to whom the Attorney General has delegated the responsibility for determining whether the alien is deportable, concluding that the alien is deportable or ordering deportation.'" *Id*. at 979 (quoting 8 U.S.C. § 101(a)(47)(A)). Such an order becomes final upon the earlier of "'(i) a determination by the [BIA] affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the [BIA].'" *Id*. (quoting 8 U.S.C. § 1101(a)(47)(B)).

In its analysis, the *Singh* court noted that, at the time that the alien's counsel filed the late petition for review, the removal order against the alien had already become final. "The alleged ineffective assistance of [counsel] occurred *after* the

-9-

issuance of the final order of removal, and the claimed injury that [the alien] suffered as a result was the deprivation of an opportunity for direct review of the order of removal in the court of appeals." *Id.* (emphasis in original). Therefore, even if the district court permitted the alien's habeas petition to proceed and determined that counsel provided ineffective assistance in failing to file a timely appeal, the alien's only remedy would be the restarting of the 30-day period for the filing of a petition for review with the court of appeals. *Id.* Put another way, "a successful habeas petition in this case will lead to nothing more than 'a day in court' for [the alien], which is consistent with Congressional intent underlying the REAL ID Act." *Id.* Thus, the court would not construe the ineffective assistance of counsel claim "as seeking judicial review of [the alien's] final order of removal, notwithstanding his ultimate goal or desire to overturn that final order of removal." *Id.*

Skurtu's reliance on *Singh* for support of his position is misplaced. In *Singh*, the Ninth Circuit specifically held that a claim for ineffective assistance of counsel in connection with a "post-administrative filing of an appeal" was not an order of removal. *Id.* at 972. Unlike in *Singh* where the alien's claim for ineffective assistance of counsel arose *after* the issuance of the removal order, Skurtu's claims that he was denied his right to counsel and a fair hearing are a direct result of the removal proceedings before the IJ. Specifically, Skurtu is attacking the IJ's decisions not to appoint Skurtu counsel and develop the record more fully.

Accordingly, we hold that because Skurtu's "Complaint" seeks review of the IJ's removal order, "sole and exclusive means for judicial review" is vested in this court.

### B. *Untimeliness of Skurtu's "Complaint" and Equitable Tolling*
Having determined that Skurtu's "Complaint" seeks review of an order of removal and that such "Complaint" falls within the purview of the REAL ID Act, we must now consider whether we have subject matter jurisdiction over Skurtu's

"Complaint," considering that it was filed more than 100 days after the BIA's February 27, 2007 decision.

An alien must file a petition for review of a removal order no later than 30 days after the date of the final order of removal. INA § 242(b)(1), 8 U.S.C. § 1252(b)(1). "The timeliness requirement set forth in the INA [for filing a petition for review] is mandatory and jurisdictional." *White v. INS*, 6 F.3d 1312, 1318 (8th Cir. 1993) (internal quotations and citation omitted); *see also Stone v. INS*, 514 U.S. 386, 405 (1995) (holding that § 106 of the INA is a "jurisdictional statute" that specifies the time of review and that such time limits are "mandatory and jurisdictional" and "not subject to equitable tolling"); *Sukhov v. Gonzales*, 403 F.3d 568, 570 (8th Cir. 2005) ("The [aliens] have not asserted any error of law or fact in the prior panel's holding that it lacked jurisdiction over the untimely filed petition for review. In fact, the panel's holding was compelled by the statutory limits to our jurisdiction."); *Hassan v. Gonzales*, 180 Fed. Appx. 602, 602 (8th Cir. 2006) (unpublished per curiam) ("We dismiss the petition for review as untimely, because [the alien] did not file his petition within thirty days of the BIA's final order affirming the IJ's removal order.").

The time limits for filing a petition for review are mandatory and jurisdictional and not subject to equitable tolling. Consequently, we hold that we lack subject matter jurisdiction over Skurtu's "Complaint," as it was filed more than 100 days after the date of the final order of removal.

## C. *Suspension Clause*

Finally, Skurtu argues that if equitable tolling is unavailable, a denial of habeas relief to Skurtu based on the provisions of the REAL ID Act would violate the Suspension Clause of Article I of the United States Constitution. According to Skurtu, a question remains as to whether the jurisdiction of the courts of appeals to hear petitions for review of removal orders under the REAL ID Act qualifies as an "adequate substitute" for habeas review.

-11-

As noted by the government, this court has expressly held that § 106 of the REAL ID Act is an adequate substitute to habeas jurisdiction. *Mohamed v. Gonzales*, 477 F.3d 522, 526 (8th Cir. 2007). In *Mohamed*, we recognized that 8 U.S.C. § 1252(a)(2)(D) vests in us the power to "review all constitutional claims and questions of law in the removal order" and that Congress "created a remedy as broad in scope as a habeas petition." *Id*. As a result, the REAL ID Act "is an adequate and effective substitute to test the legality of a person's detention." *Id*.

In accordance with *Mohamed*, we hold that Skurtu's inability to seek habeas review of his removal order does not violate the Suspension Clause, as the REAL ID Act is an adequate substitute for habeas review.

### III. *Conclusion*

Accordingly, we dismiss Skurtu's "Complaint" for lack of jurisdiction.

_____