**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

J. E. F.M., a minor, by and through his Next Friend, Bob Ekblad; J. F.M., a minor, by and through his Next Friend Bob Ekblad; D. G. F.M., a minor, by and through her Next Friend, Bob Ekblad; F. L.B., a minor, by and through his Next Friend, Casey Trupin; G. D.S., a minor, by and through his mother and Next Friend, Ana Maria Ruvalcaba; M. A.M., a minor, by and through his mother and Next Friend, Rose Pedro; J. E. V.G.; A. E. G.E.; G. J. C.P.,

        *Plaintiffs-Appellees/*
        *Cross-Appellants*,

    v.

MATTHEW WHITAKER, Acting Attorney General; JUAN P. OSUNA, Director, Executive Office for Immigration Review; JEH CHARLES JOHNSON, Secretary, Homeland Security; THOMAS S. WINKOWSKI, Principal Deputy Assistant Secretary, U.S. Immigration and Customs Enforcement; NATHALIE R. ASHER, Field Office Director, ICE ERO;

Nos. 15-35738
15-35739

D.C. No.
2:14-cv-01026-
TSZ

ORDER

KENNETH HAMILTON, AAFOD,
ERO; SYLVIA MATHEWS BURWELL,
Secretary, Health and Human
Services; ESKINDER NEGASH,
Director, Office of Refugee
Resettlement,
                    *Defendants-Appellants*
                        *Cross-Appellees.*

Filed November 13, 2018

Before: Andrew J. Kleinfeld, M. Margaret McKeown,
and Milan D. Smith, Jr., Circuit Judges.

Order;
Dissent by Judge Berzon

# SUMMARY[*]

## Immigration

In a case in which the panel concluded that the district court lacked jurisdiction to review claims brought by a class of children who claim a due process and statutory right to appointed counsel in removal proceedings, the panel filed an order denying a petition for panel rehearing and rehearing en banc.

Dissenting from the denial of rehearing en banc, Judge Berzon, joined by Judges Wardlaw, W. Fletcher, Paez, and Murguia, wrote that the case should have been reheard en banc to correct the panel's errors in concluding that the relevant statutes do not allow the children to raise their right-to-counsel claim in an affirmative habeas action.

Judge Berzon wrote that the plain language of the statute, the circuit's case law, and Supreme Court precedent all indicate that 8 U.S.C. § 1252(b)(9) bars district court review of a claim *only* where an order of removal has been entered and an individual seeks relief from that order. Because the immigration proceedings in this case have not reached that stage, Judge Berzon concluded that there is no statutory barrier to allowing this case to go forward. Judge Berzon also wrote that the panel's expansive reading of § 1252(b)(9) severely hampers meaningful judicial review of the children's right-to-counsel claims and, therefore, disregards the crucial rule of statutory interpretation that jurisdiction-

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

channeling provisions should not be interpreted to result in the practical equivalent of a total denial of judicial review of generic constitutional and statutory claims.

---

### ORDER

The panel votes to deny the petition for rehearing.

The full court has been advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 35.

The petition for panel rehearing and the petition for rehearing en banc are denied.

---

BERZON, Circuit Judge, with whom WARDLAW, W. FLETCHER, PAEZ, and MURGUIA, Circuit Judges, join, dissenting from the denial of rehearing en banc:

The plaintiffs in this case are a class of thousands of unrepresented children the United States seeks to expel from the country. Many arrived here after fleeing violence and persecution, and many could be eligible for asylum, Special Immigrant Juvenile Status ("SIJS"), or other protections. Some arrived accompanied by an adult; others did not. To obtain relief, they all will be required to represent themselves against trained government attorneys in adversarial proceedings involving the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, a code of law "second only to the Internal Revenue Code in complexity." *Castro-*

*O'Ryan v. INS*, 847 F.2d 1307, 1312 (9th Cir. 1987) (quoting E. Hull, *Without Justice For All* 107 (1985)).

The class of children in this case do not challenge any orders of removal or ask the district court to grant them relief from removal.[1] Instead, they maintain that they have a due process and statutory right to appointed counsel in the removal proceedings they face.

---

[1] The certified class of plaintiffs consists of:

All individuals under the age of eighteen (18) who:

(1) are in removal proceedings, as defined in 8 U.S.C. § 1229a, within the boundaries of the Ninth Judicial Circuit, on or after the date of entry of this Order;

(2) were not admitted to the United States and are alleged, in such removal proceedings, to be "inadmissible" under 8 U.S.C. § 1182;

(3) are without legal representation, meaning (a) an attorney, (b) a law student or law graduate directly supervised by an attorney or an accredited representative, or (c) an accredited representative, all as defined in 8 C.F.R. § 1292.1;

(4) are financially unable to obtain such legal representation; and

(5) are potentially eligible for asylum under 8 U.S.C. § 1158, withholding of removal under 8 U.S.C. § 1231(b)(3), or protection under the Convention Against Torture, or are potentially able to make a colorable claim of United States citizenship.

The panel did not allow the merits of their right-to-counsel claim to be heard. Instead, it shut the courthouse doors on them, broadly proclaiming that 8 U.S.C. § 1252(b)(9) strips district courts of jurisdiction to hear "*any* issue—whether legal or factual—arising from *any* removal-related activity." *J.E.F.M.*, 837 F.3d at 1031. According to the panel, the children's right-to-counsel claims can be raised only in individual petitions for review of final orders of removal ("PFR") to the appropriate circuit court. *Id.*[2] The issue in this case then, is *not* the merits of the right-to-counsel claim. The issue is only *how* and *where* such a claim may be raised.

Contrary to the panel's conclusion, the relevant statutes do allow the children to raise their right-to-counsel claim in an affirmative habeas action. That procedure, unlike appellate review of an individual removal order, provides the opportunity for full litigation of their claim, including: (1) litigation through a class action rather than by each child individually; (2) representation of the class for purposes of the right-to-counsel question by public interest organizations that lack the capacity to represent each class member individually; and (3) development of a record regarding the need for and value of attorneys that cannot be developed in individual removal proceedings. We should have reheard this case en banc to correct the panel's errors and given these children—and others potentially affected by the panel's rigid procedural ruling—their day in court.

---

[2] This court will hear en banc a right-to-counsel claim brought by one minor through the PFR process in *C.J.L.G. v. Sessions*, 880 F.3d 1122 (9th Cir. 2018), *reh'g en banc granted*, 904 F.3d 642 (9th Cir. 2018). That minor proceeded pro se throughout his immigration proceedings and obtained counsel only to file his PFR with our court. 880 F.3d at 1127, 1130.

## I.

The plain language of the statute, our circuit's case law, and Supreme Court precedent all indicate that 8 U.S.C. § 1252(b)(9) bars district court review of a claim *only* where an order of removal has been entered and an individual seeks relief from that order. Because the immigration proceedings involving the class of children here have not reached that stage, there is no statutory barrier to allowing this case to go forward.

## A.

The panel's opinion relies on 8 U.S.C. § 1252(b)(9), which provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

But the panel ignores that § 1252(b)(9) is a sub-provision of § 1252(b), which begins:

**(b) Requirements for review of orders of removal**

With respect to review of an order of removal under subsection (a)(1), the following requirements apply: . . . .

Section 1252(b)(9) is one of the "requirements" listed under § 1252(b). In context and as a matter of plain language, it "appl[ies]" "[w]ith respect to review of an order of removal." So § 1252(b)(9) does not apply *before* such an order has been entered, to a claim that does not seek review of such an order. "[W]hen deciding whether the language is plain, we must read the words in their context and with a view to their place in the overall statutory scheme." *King v. Burwell*, 135 S. Ct. 2480, 2489 (2015) (quotation marks omitted). The panel opinion entirely ignores the introductory language in § 1252(b) and so errs in interpreting § 1252(b)(9) outside its statutory context.

The provisions surrounding § 1252(b)(9) confirm that the provision applies only to challenges to final orders of removal. Like § 1252(b)(9), every other sub-provision under § 1252(b) assumes that a final order of removal has been entered. For example, § 1252(b)(1) requires a PFR to be filed "no later than 30 days after the date of the final order of removal." Section 1252(b)(2) establishes as the appropriate venue for review of a PFR the court of appeals "in which the immigration judge completed the proceedings." *See also, e.g.*, § 1252(b)(3) (specifying that service of a PFR must be on the officer in charge of the "district in which the final order of removal" was entered); § 1252(b)(4) (requiring review of a PFR to be "only on the administrative record on which the order of removal is based").

The Supreme Court has confirmed that the statute means exactly what it says. *INS v. St. Cyr* explained that § 1252(b)(9) "applies only '[w]ith respect to review of an order of removal under subsection (a)(1).'" 533 U.S. 289, 313 (2001) (quoting 8 U.S.C. § 1252(b)).

Congress could have written § 1252(b) to apply generally to all issues relating to actions or proceedings brought to remove an alien from the United States. Alternatively, it could have placed § 1252(b)(9) in a different part of the statute. But Congress chose instead to apply all the "requirements" specified under § 1252(b), including § 1252(b)(9), only to "review of an order of removal."

In short, § 1252(b)(9) applies only when an order of removal has been entered and the petitioner seeks review of that order. The children in this case have not been ordered removed, so they cannot be, and are not, seeking review of a removal order. Section 1252(b)(9)'s channeling directive is simply inapplicable.

In coming to the opposite conclusion, the panel reasoned that when Congress enacted § 1252(b)(9) in 1996, it adopted the expansive jurisdiction-channeling language suggested in *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 494 (1991). *J.E.F.M.*, 837 F.3d at 1036. But that conclusion once again ignores the introductory language in § 1252(b) and so elides the critical difference between the language suggested in *McNary* and § 1252(b)(9): In revising the statute, Congress located § 1252(b)(9) under § 1252(b), and thus limited its application to "review of an order of removal." *Cf. Mace v. Skinner*, 34 F.3d 854, 857, 859 (9th Cir. 1994) (holding that a statute restricting jurisdiction to review "[a]ny order . . . issued by the Board" did not apply to a case

that was "not based on the merits of [an] individual situation").

Nor does the Supreme Court's recent decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), narrow the impact of the introductory language in § 1252(b) on § 1252(b)(9). *Jennings* held that § 1252(b)(9) did not bar district court review of a challenge to immigration detention. Three (of eight) justices acknowledged that the detention claims at issue in that case were not "challenging any part of the process by which their removability will be determined," but they did not hold that § 1252(b)(9) would bar such a challenge if raised. *Id.* at 841 (opinion of Alito, J., joined by Roberts, C.J., and Kennedy, J.). Rather, they confined their analysis of § 1252(b)(9) to "present purposes," and expressly disclaimed any "attempt to provide a comprehensive interpretation" of that provision. *Id.* at 840–41. Three other justices concluded that § 1252(b)(9) did not bar the detention challenges at issue because the provision "applies only '[w]ith respect to review of an order of removal.'" *Id.* at 876 (Breyer, J., dissenting, joined by Ginsburg and Sotomayor, JJ.) (quoting § 1252(b)). That understanding, of course, is precisely the one that, in my view, governs here. So, although *Jennings* did not decide the court access question in this case, it did not adopt the panel's out-of-statutory-context reading of § 1252(b)(9) either.

Finally, the panel concluded that 8 U.S.C. § 1252(a)(5), "taken together" with § 1252(b)(9), strips the district court of jurisdiction to review the children's claims. *J.E.F.M.*, 837 F.3d at 1031. Section 1252(a)(5) provides, in relevant part:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus

> provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e).

As is apparent, § 1252(a)(5) cannot bear the weight the panel placed on it. Like § 1252(b)(9), § 1252(a)(5) applies only to "judicial review of an order of removal entered or issued." No such review is sought here.

## B.

The panel's holding that § 1252(b)(9) applies to "*any* issue . . . arising from *any* removal-related activity," *J.E.F.M.*, 837 F.3d at 1031, is irreconcilable not only with the statutory language and context, and with *St. Cyr*, but also with this court's precedents. We have twice held that § 1252(b)(9) does not apply to claims that do not seek review of an order of removal.

*Nadarajah v. Gonzales* concluded that § 1252(b)(9) did not bar the district court's review of a challenge to prolonged immigration detention before a final order of removal had issued. 443 F.3d 1069, 1075–76 (9th Cir. 2006). We explained the meaning of § 1252(b)(9) as follows:

> The REAL ID Act amends the Immigration and Nationality Act by eliminating federal habeas corpus jurisdiction over final orders of removal in favor of petitions for review that raise "constitutional claims or questions of law." 8 U.S.C. § 1252(b)(9) (as amended

by REAL ID Act § 106(a)(2)). However, this provision only applies to federal habeas corpus jurisdiction over "final orders of removal." *Id. By its terms, the jurisdiction-stripping provision does not apply to federal habeas corpus petitions that do not involve final orders of removal.* Here, as we have noted, there is no final order of removal. To the contrary, Nadarajah has prevailed at every administrative level. Therefore, in cases that do not involve a final order of removal, federal habeas corpus jurisdiction remains in the district court, and on appeal to this Court, pursuant to 28 U.S.C. § 2241.

*Id*. (emphasis added, citation omitted). The panel misinterpreted *Nadarajah* by concluding that it "distinguished between claims that 'arise from' removal proceedings under § 1252(b)(9)—which must be channeled through the PFR process—and claims that are collateral to, or independent of, the removal process." *J.E.F.M.*, 837 F.3d at 1032. That is not what *Nadarajah* said. The words "arise from" never appear in the opinion; nor was our jurisdictional holding in that case limited to claims collateral to removal. Instead, *Nadarajah* unequivocally, and without qualification, held that § 1252(b)(9) does not apply to federal habeas corpus petitions that do not concern a final order of removal.**[3]**

---

**[3]** *See also Trinidad y Garcia v. Thomas*, 683 F.3d 952, 958 (9th Cir. 2012) (en banc) (Thomas, J., concurring) ("The jurisdiction-stripping provisions of the REAL-ID Act removed federal habeas jurisdiction over final orders of removal, in favor of direct petitions for review. But the REAL-ID Act's jurisdiction-stripping provisions do *not* remove federal

One year later, we reaffirmed *Nadarajah*'s interpretation of § 1252(b)(9), holding that the provision did not bar a habeas petition challenging ineffective assistance of immigration counsel. *Singh v. Gonzalez* explained that, "[b]y virtue of their explicit language, both §§ 1252(a)(5) and 1252(b)(9) apply only to those claims seeking judicial review of orders of removal." 499 F.3d 969, 978 (9th Cir. 2007). *Singh* acknowledged that § 1252(b)(9) covers "any action taken or proceeding brought to remove an alien," but interpreted the phrase "simply [to] mean[] that if the alien fails to consolidate his claims as required under § 1252(b)(9), he may not later bring a separate habeas claim to raise 'questions of law or fact' that should have been brought as part of a challenge to his final order of removal." 499 F.3d at 978, 978 n.11; *see also id.* at 978 ("In *St. Cyr*, the [Supreme] Court confirmed that § 1252(b)(9) 'applies *only* with respect to review of an *order of removal* under [8 U.S.C. § 1252(a)(1).]' . . . The language added by the REAL ID Act does nothing to change or undermine that analysis." (quoting *St. Cyr*, 533 U.S. at 313)). On that basis, *Singh* held that because the ineffective assistance of counsel claim in that case "d[id] not require review of an order of removal," the petitioner was not precluded from bringing his action in the district court. *Id.* at 972.

*J.E.F.M.* misstated *Singh* as being limited to the "unique situation" presented by its facts—an "ineffective-assistance-of-counsel claim that arose after his attorney failed to file a timely PFR." 837 F.3d at 1032. That reading is not accurate.[4]

habeas jurisdiction over petitions that do not *directly challenge* a final order of removal.") (second emphasis added, citation omitted).

[4] Other courts of appeals have taken *Singh* at its word and interpreted it to mean exactly what it says. *See Chehazeh v. Attorney Gen. of U.S.*,

*Singh* did not just recognize a narrow and fact-specific exception to the statute's application. Rather, *Singh* analyzed and interpreted the *general* scope of § 1252(b)(9), recognizing that its interpretation of the statute was required by the Supreme Court's analysis in *St. Cyr* and by the plain language of the statute. And it stated unequivocally that § 1252(b)(9) applies only with respect to review of an order of removal.**[5]**

While writing the holdings of *Nadarajah* and *Singh* out of existence, the panel purported to rely instead on *Martinez v. Napolitano*'s statement that "[w]hen a claim by an alien, however it is framed, challenges the procedure and substance of an agency determination that is 'inextricably linked' to the order of removal, it is prohibited by section 1252(a)(5)." 704 F.3d 620, 623 (9th Cir. 2012). But *Martinez* established a clear test for when a claim *is* "inextricably linked" to an order of removal: "[T]he distinction between an independent claim and indirect challenge will turn on the substance of the relief that a plaintiff is seeking." *Id.* at 622 (quotation marks omitted). That is, a claim is barred by § 1252(a)(5) if "the substance

---

666 F.3d 118, 132 (3d Cir. 2012); *Skurtu v. Mukasey*, 552 F.3d 651, 657 (8th Cir. 2008); *Ochieng v. Mukasey*, 520 F.3d 1110, 1115 (10th Cir. 2008).

**[5]** That the petitioner in *Singh* was not allowed "to raise a different ineffective assistance of counsel claim that arose before a final order of removal entered" is consistent with the understanding that § 1252(b)(9) does apply to review of a final order of removal. *See J.E.F.M.*, 837 F.3d at 1032. In *Singh*, an order of removal against the petitioner had entered by the time he raised his claims. 499 F.3d at 973. Therefore, Singh's second ineffective assistance of counsel claim amounted to seeking relief from his removal order.

of the relief [the plaintiff] is seeking . . . would *negate his order of removal*." *Id.* at 623 (emphasis added). *Martinez* therefore recognized that § 1252(a)(5), in general, applies only when there is an order of removal, not when none has been entered.[6]

In sum, our precedents, guided by the Supreme Court's understanding in *St. Cyr*, have repeatedly held that § 1252(b)(9) strips district courts of habeas jurisdiction only in cases where a final order of removal has been entered and the claim seeks relief from that order. The panel's conclusion to the contrary in *J.E.F.M.* ran roughshod over the statutory language and structure, as well as binding law.

## II.

There is a second reason why the panel was wrong in holding that the district court did not have jurisdiction to hear the children's claims. *J.E.F.M.* disregarded the crucial rule of statutory interpretation that jurisdiction-channeling provisions should not be interpreted to result in the "practical equivalent of a total denial of judicial review of generic constitutional and statutory claims." *McNary*, 498 U.S. at 497. By requiring unrepresented children to present their right to counsel claims through the PFR process, the panel

---

[6] *Singh* also adopted a remedy-based inquiry to determine when an individual seeks review of an order of removal, similar to the test in *Martinez*. *See* 499 F.3d at 979. Singh claimed that his attorney was ineffective because he missed the thirty-day deadline to file a PFR with the court of appeals. We explained that because the remedy for Singh's ineffective assistance of counsel claim would not be to overturn an order of removal, but only to restart the thirty-day period for the filing of a PFR, his claim "cannot be construed as seeking judicial review of his final order of removal, notwithstanding his ultimate goal or desire to overturn that final order of removal." *Id.* at 979.

ensures that, for most litigants, meaningful judicial review of those claims will never occur.

## A.

The Supreme Court has long recognized a "well-settled presumption favoring interpretations of statutes that allow judicial review of administrative action." *McNary*, 498 U.S. at 496 (citing *Bowen v. Michigan Acad. of Family Physicians*, 476 U.S. 667, 670 (1986)). The Court has "consistently applied [this presumption] to legislation regarding immigration, and particularly to questions concerning the preservation of federal-court jurisdiction." *Kucana v. Holder*, 558 U.S. 233, 251 (2010). So, when Congress enacts a jurisdiction-channeling provision, like § 1252(b)(9), we presume that it does not intend to preclude meaningful judicial review of otherwise cognizable claims.**[7]**

## B.

*J.E.F.M.*'s expansive reading of § 1252(b)(9) severely hampers meaningful judicial review of the children's right-to-counsel claims. Contrary to the panel's overly sanguine holding, many unrepresented minors—especially those who are quite young or unaccompanied—will likely never make it to the court of appeals in the first place. And if they do, they will arrive there without the factual record necessary to demonstrate the importance of counsel. That is because, as a practical matter, the most important factor in ensuring

---

**[7]** Three justices of the Supreme Court affirmed this presumption in *Jennings v. Rodriguez*. They concluded that § 1252(b)(9) could not be read to bar district court review of immigration detention challenges because doing so would "depriv[e] . . . detainee[s] of any meaningful chance for judicial review" of those claims. 138 S. Ct. at 840 (opinion of Alito, J., joined by Roberts, C.J., and Kennedy, J.).

meaningful review of a right-to-counsel claim is having counsel.

Even if a tenacious child managed to file a timely appeal to the BIA and then a timely PFR in this court claiming a right to appointed counsel, we will often be unable to afford the claim meaningful judicial review. Judicial review of a PFR filed in our court is confined to the record made in administrative proceedings. *See Dent v. Holder*, 627 F.3d 365, 371 (9th Cir. 2010); 8 U.S.C. § 1252(b)(4)(A). Immigration Judges ("IJs") and the Board of Immigration Appeals ("BIA") have no reason to develop an adequate record related to the categorical right-to-counsel claim at issue in this case. In removal proceedings, the IJ's and BIA's concern is with the merits of the individual noncitizen's case. They have no authority to document whether, in general, unrepresented children as a class are unfairly deprived of immigration relief. And critically, IJs and the BIA have no authority to determine the constitutionality of the procedures they administer. *See Padilla-Padilla v. Gonzales*, 463 F.3d 972, 977 (9th Cir. 2006). They therefore have no reason to inquire into the additional value that counsel would provide. Yet, due process analysis requires evaluating "the probable value, if any, of additional or substitute procedural safeguards." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

*McNary* emphasized that an inadequate record can prevent meaningful judicial review. The government argued in *McNary* that the district court lacked jurisdiction to consider a categorical constitutional challenge to INS procedures in hearings regarding eligibility for the Special Agricultural Worker program ("SAW"), a form of relief for noncitizens who would otherwise be subject to removal. *McNary*, 498 U.S. at 483, 487–88. The Court rejected that argument and held that meaningful judicial review of

petitioners' categorical challenge was not feasible where a court of appeals could review only the record of individual deportation proceedings. *Id*. at 497. As *McNary* noted, challenging the INS practices at issue required presenting evidence that "would have been irrelevant in the processing of a particular individual application." *Id*. Thus, *McNary* concluded, "[n]ot only would a court of appeals reviewing an individual SAW determination therefore most likely not have an adequate record as to the pattern of [the Immigration and Naturalization Service's] allegedly unconstitutional practices, but it also would lack the factfinding and record-developing capabilities of a federal district court." *Id*.

The *J.E.F.M.* panel dismissed the considerable obstacles to bringing a generic right-to-counsel claim through the PFR process by pointing to one case in which an unrepresented minor did so. 837 F.3d at 1037. But in *McNary*, the Court considered the impact of the government's proposed jurisdictional rule on "*most* aliens denied SAW status." 498 U.S. at 496 (emphasis added). It did not conclude, as the *J.E.F.M.* panel did, that meaningful judicial review was available so long as *any* exceptional individual might be able to obtain judicial review.

Since the panel issued its opinion in *J.E.F.M.*, one other minor, unrepresented in his removal proceedings, acquired counsel and raised a right-to-counsel claim in a PFR before this court. After a panel of three judges rejected his claim, we took the case en banc; it is now pending rehearing before an en banc panel. *See C.J.L.G. v. Sessions*, 880 F.3d 1122 (9th Cir. 2018), *reh'g en banc granted*, 904 F.3d 642 (9th Cir. 2018). The record in *C.J.L.G.* consists almost exclusively of documents from the child's individual removal proceedings. And, because the child was

unrepresented during those proceedings, the record contains no specific explication of what an attorney could have done.

The en banc panel in *C.J.L.G.* will have the children's right-to-counsel issue before it via the PFR route, as that has now become the only road to deciding this essential constitutional issue. But for all the reasons I have given, that narrow path has considerable drawbacks and is not what Congress intended.

## III.

In one recent immigration case, lawyers representing a three-year-old child in removal proceedings recounted that during the middle of his hearing, the child began crawling on the table.[8] Absurdly, the only thing atypical about that case was that the child had a lawyer. Thousands of children, some very young and many unaccompanied, continue to appear for their immigration proceedings without representation.[9] They face trained government attorneys, convoluted procedures and paperwork, and hearings conducted using technical jargon in a language they often do not understand. The result is nearly preordained: deportation

---

[8] *See* Christina Jewett & Shefali Luthra, *Immigrant Toddlers Ordered to Appear in Court Alone*, Texas Tribune (June 27, 2018), https://www.texastribune.org/2018/06/27/immigrant-toddlers-ordered-appear-court-alone/.

[9] *See Children: Amid a Growing Court Backlog Many Still Unrepresented*, Transactional Records Access Clearinghouse (TRAC) (August 2017), http://trac.syr.edu/immigration/reports/482/#f1.

back to a country where they will face violence and persecution.[10]

The special concurrence in *J.E.F.M.* expressed sympathy for the children whom it has left "to thread their way alone through the labyrinthine maze of immigration laws," yet it ultimately passes off responsibility for this crisis to "the Executive and Congress." 837 F.3d at 1039–40 (McKeown, J., specially concurring). But our responsibility is to apply the law properly, not to contradict the plain language of the statute, Supreme Court precedent, our prior case law, and long-settled rules of statutory interpretation. These children present weighty constitutional issues that may determine their ability to remain in the United States or be returned to countries in which they face serious danger. The law requires that we at least hear them out.

Respectfully, I dissent from the denial of rehearing en banc.

---

[10] Children with counsel are five times more likely to be successful in immigration court than children appearing pro se—73 percent versus 15 percent. *See A Humanitarian Call to Action: Unaccompanied Children in Removal Proceedings Continue to Present a Critical Need for Legal Representation,* ABA Commission on Immigration (June 3, 2015), https://www.americanbar.org/content/dam/aba/administrative/immigration/uacstatement.authcheckdam.pdf.